## Texas & Pacific Railway Company v. H. O'Mahoney.

### Decided December 11, 1900.

**1. Evidence—Parol Sale of Land—Case Followed.**

The ruling on the former appeal herein, sustaining the admissibility of evidence tending to show a verbal sale of the land to plaintiff, is adhered to. Railway v. O'Mahoney, 50 S. W. Rep., 1049.

**2. Damage to Land—Overflow—Negligence.**

Where defendant, by collecting water in a reservoir upon its land, damaged the premises of plaintiff, an adjoining proprietor, by overflow and percolation, it was liable therefor, irrespective of negligence in the construction of the reservoir.

**3. Same—Former Recovery Not Res Judicata.**

A recovery for damages to land by overflow and percolation from a reservoir will not bar an action for additional damages resulting from subsequently raising the dam and the water in the reservoir.

**4. Same—Measure of Damages—Value of Land.**

Where plaintiff pleaded that his land was rendered valueless by percolation and overflow of water from a reservoir erected by defendant on adjoining premises, the court correctly charged as the measure of damages the value of any part of the land that may have been so rendered valueless by the water, and that this damage could not be offset by benefits to the remainder of plaintiff's land from the reservoir.

**5. Same—Plaintiff's Duty to Avert Injury.**

See the opinion for facts under which it was not error for the court to refuse a charge as to the duty of plaintiff to avert and lessen the injury by removing the cause at his own expense.

APPEAL from Marion. Tried below before Hon. J. M. TALBOT.

*F. H. Prendergast,* for appellant.

*T. P. Young,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted by H. O'Mahoney against the Texas & Pacific Railway Company, in the District Court of Harrison County, in May, 1895, to recover damages alleged to have been sustained by him by reason of defendant's erection of a lake or dam on the land of defendant, and permitting the water to escape therefrom and spread over the land of plaintiff. The cause, on motion of plaintiff, was removed to Marion County. Plaintiff alleged, among other things, that in the month of April, 1894, defendant raised the north bank of said lake or dam about four feet; that the raising of said bank caused the water therein to rise about six feet above the level of plaintiff's land, and about four feet higher than the same had formerly stood; that the water, in consequence of its height above plaintiff's land, sipes through the embankment of said dam upon plaintiff's land, rendering three acres valueless. It is further alleged that by reason of the raising of the banks of said lake and the waste way for the discharge of water therefrom, the north bank of said ditch leading to said dam was caused to overflow, and the water therefrom ran under and around the dwelling-house of plaintiff, destroying his garden, washing holes in his land in which the water stood, and the odors arising therefrom and from the decaying vegetables produced sickness in his family. That this continued until October 1, 1894, at which time defendant raised the bank of the ditch, thereby stopping the overflow. Defendant answered by general denial, limitation, former suit, and other special defenses. The trial resulted in a verdict and judgment for plaintiff, and defendant appeals.

*Conclusions of Fact.*—In 1891 James Turner was the owner of about nine acres of land situated in the city of Marshall, Texas, just north of the Texas & Pacific Railway Company's shops, being the land described in the petition. During that year James Turner borrowed from Mrs. Bridget O'Mahoney, wife of plaintiff, $500, to secure which said Turner placed plaintiff in possession of said land, to remain in possession until said loan was paid, and said land was pledged to secure its payment. Plaintiff, by the terms of the lease, was to have the privilege of fencing and improving said land, and Turner agreed to pay for said improvements when the lease terminated. Plaintiff erected a residence and outhouses on the land and also fenced it. In April, 1894, Turner, being unable to pay for the improvements placed on said land by plaintiff, entered into an agreement with plaintiff to the effect that plaintiff could have the land for the debt which Turner owed Mrs. O'Mahoney. Thereupon plaintiff surrendered the note to Turner which he held against him for the borrowed money. The deed was not made at that time because the field notes of the tract were not then known. Thereafter, James Turner, at the request of plaintiff, executed the following statement in reference to said land: "In April or May of 1894 I sold to O'Mahoney the tract of land in Marshall, known as the Speed place, containing about nine acres of land, the same tract on which O'Ma-

honey now resides. He paid me for the land, but the deed has not been made because we were waiting to ascertain the limits of another tract sold at the same time. My contract is to make him a deed to the land with all of its appurtenances, with full warranty of title. James Turner."

In 1896, James Turner, in compliance with his contract made April, 1894, and in furtherance of the above statement, without any additional consideration, executed to Mrs. B. O'Mahoney, wife of plaintiff, a deed for the land described in the petition. In 1884 the defendant railway company constructed a dam or lake near its machine shops in the city of Marshall, covering about four or five acres of land, for the purpose of furnishing water to its shops and engines. It also constructed a ditch from said lake to a creek which ran about 600 yards west of the shops, and erected a dam across said creek and diverted the water through said ditch to said dam or lake. Said creek is a perennial stream except in very dry seasons, at which time the water stands in holes. The lake and ditch are upon defendant's land. Plaintiff's land lies directly north of said lake, and is separated from the bank by a strip of land fifty feet wide, which is owned by defendant. In the spring of 1894, and after plaintiff was placed in possession of his land by Turner, the railway company raised the north bank of the dam or lake between two and three feet, and also raised the waste way where the water ran out of said dam. After this raise of the bank, the water stood about eight feet deep in the lake, and about six feet above the level of plaintiff's land. The raising of the bank and increase in the height of the water caused the water to percolate through and under the embankment on the eastern portion of plaintiff's land, causing 2¾ acres thereof to become marshy and unfit for use. It also caused the ditch where it empties in the dam to overflow, and a large volume of water therefrom ran over plaintiff's land every time there was a rain, washing holes therein. The water from the overflowing of the ditch destroyed the garden and vegetables of plaintiff. During the summer of 1894 the water therefrom stood in holes around plaintiff's house, and the standing water and decaying vegetables gave out offensive odors. Plaintiff's daughter became sick therefrom, which necessitated an expense for medicine, services for a physician, and nursing. In October, 1894, the railroad company raised the banks of the ditch where the same overflowed, since which time there has been no overflow of said ditch. Plaintiff has sustained damages by said acts of defendant in the several sums found by the jury.

*Conclusions of Law.*—Appellant's first and second assignments of error relate to the ruling of the trial court in the admission of the evidence of James Turner and H. O'Mahoney, tending to show a verbal sale of the land to plaintiff in 1894. Defendant excepted to the admission of this evidence because it was a sale of real estate, and no written memorandum was made of such sale. Defendant also excepted to the

written statement of James Turner, because it was a mere ex parte statement. The exceptions were overruled and the evidence admitted.

The questions presented by these assignments were passed upon by this court on the former appeal of this case adverse to the contention of the appellant. We see no reason for changing our holding, and said assignments are overruled. 50 S. W. Rep., 1049.

Appellant's third, fourth, fifth, sixth, and seventh assignments of error are grouped together, and under the same this proposition is presented: "In all actions sounding in tort to enforce a common law right the plaintiff must allege and prove some negligent or wrongful act of the defendant which caused the damages." The proposition contended for by the appellant was presented on the former appeal, and we then held the same to be unsound. See opinion on former appeal and authorities there cited, 50 Southwestern Reporter, 1049. But counsel for appellant in oral argument insists that our Supreme Court, in the case of Railway v. Oakes, recently decided by that court on certified questions from the Second District, has established a different rule from the one laid down by this court on the former appeal. It is contended that the decision in the Oakes case supports the above proposition. We do not so understand that decision. In that case the plaintiff sought to recover damages from the railway company by reason of the company having planted Bermuda grass on its right of way as a protection thereto, which grass spread upon plaintiff's land and caused damage. The learned judge who delivered the opinion in that case, we think, recognizes in the opinion that a different rule than the one there stated would prevail, where, as in this case, one erects upon his premises an artificial lake or dam and diverts the water from a natural stream to such lake or dam and stores the same therein at a height of several feet above the adjoining land, and permits such water to escape upon the adjoining land, destroying its value.

In the case under discussion the defendant constructed upon its own land a dam or lake covering about four acres of land, with a ditch 600 yards long, and by means of the said ditch diverted the water from a natural stream to said lake or dam and stored the same therein, maintaining the same at a height of six feet above the plaintiff's land. The water thus stored, by reason of its pressure percolated through and under the embankment upon plaintiff's land causing 2¾ acres thereof to become marshy, unfit for use, and valueless. The water overflowed said ditch where it empties into said lake or dam and ran upon plaintiff's land, washed holes therein, and destroyed his garden. The water stood in holes upon his land under and around his house, and the odor therefrom and from the decaying vegetables produced serious sickness in his family. This continued from April, 1894, to October, 1894.

Under the facts of this case, when the defendant permitted the water to escape and destroy the land and vegetables of plaintiff it became liable for the damages occasioned thereby, regardless of the question of negligence in the construction of the dam and ditch. In addition to the

authorities cited on former appeal, see Shearm. & Redf. on Neg., 5 ed., sec. 701a; Jutte v. Hughes, 67 N. Y., 267; Mairs v. Manhattan Assn., 89 N. Y., 498; Cahill v. Eastman, 18 Minn., 324; 10 Am. Rep., 184; Parker v. Larsen, 86 Cal., 236; 21 Am. St. Rep., 30.

Appellant's eighth assignment of error complains of the action of the court in sustaining plaintiff's objection to the testimony that James Turner filed a suit in 1890 for the same damages caused by sipe water, and had settled it in 1891 for $1125. This same assignment was presented upon the former appeal and then overruled. We think this ruling correct. The bill of exceptions shows that the only permanent damage complained of in the suit by Turner was for a strip of land which, in the compromise, was deeded by Turner to the railroad. The other damages claimed in that suit were alleged to have occurred by the erection of a dam and overflow therefrom and sipage of water through the embankment in 1885. It appears from that petition that the damages there sought to be recovered were for a different cause of action than the one embraced in this suit. The plaintiff in this suit was expressly limited by the court's charge to the injuries sustained by the raising of the north bank of the dam in 1894. For these reasons, in addition to those embraced in the opinion on the former appeal, the eighth assignment is overruled.

Appellant's ninth assignment of error complains of the action of the court in refusing the following special charge requested by it: "The measure of damage to the land is the difference between the value of the land before the dam was raised and its value after the dam was raised. And if the ditch and dam was a benefit to the land, you will deduct the value of the benefit from the amount of the damage and find a verdict for the difference, if the damage is greater than the benefits." The court charged the jury, in substance, that "if they found the value of any portion of the land was destroyed by the water percolating through the embankment in and upon the land of plaintiff, then they would find for plaintiff the value of so much of said land as they found from the evidence, if any, had been so rendered valueless." The charge of the court gave the correct measure of damages, to wit, the value of the land destroyed. Plaintiff plead that his land was rendered valueless. The evidence showed that the value of 2¾ acres was destroyed. The above assignment is overruled.

Appellant's tenth assignment complains of the following special charge requested by it: "If by a small amount of labor and the expenditure of a few dollars, the plaintiff could have removed the decaying vegetation and thereby prevented the sickness in his family, then plaintiff can not recover any damages caused by said sickness." Appellant contends that plaintiff testified that the sickness of his daughter was caused by the disagreeable odor given out by the decaying vegetables, and that he further testified that cabbage was the only vegetable that gave out a disagreeable odor, and that the cabbage could have been hauled away in one or two wagon loads, at the expense of two or three

dollars. We do not concur in the restricted construction placed by appellant upon plaintiff's evidence. The plaintiff did not testify that the bad odors resulted entirely from the decaying cabbage. He testified that "at each rain in 1894, after the dam of the lake was raised, the water would overflow the north bank of the ditch across my garden and yard, and the water would stand for days in holes about the yard and garden, and the stench and odors from the ground was very bad. This continued until the ditch bank was fixed in October, 1894." He further testified that his family had good health up to the summer of 1894. On cross-examination he testified that the cabbage was the only vegetable that gave out disagreeable smells in rotting, and that the decaying cabbage could have been hauled away in one or two wagon loads at a cost of from three to five dollars.

As before stated, the evidence does not show that the disagreeable odors were produced solely by the decaying cabbage or the decaying vegetables. We recognize the rule that it is the duty of a person to use ordinary and reasonable care to prevent an injury and the consequences of it; but where the defendant relies upon the failure of the plaintiff, in this respect the burden is upon defendant to show such facts as would amount to a complete defense. Railway v. Anderson, 85 Texas, 90; Cooper v. City of Dallas, 83 Texas, 242. The evidence of defendant failed to make out such a defense. We conclude that the court did not err in refusing the charge and this assignment is overruled.

Appellant's eleventh assignment of error complains of the action of the court in refusing to grant its motion for new trial, because the weight of evidence shows that he was not damaged by sipe water from the pond on account of the dam being raised in 1894. There was a conflict in the evidence upon this contention. The jury settled the conflict adverse to appellant, and there is evidence to support the verdict. This assignment is without merit, and is overruled. These remarks also apply to the twelfth assignment, and it is overruled for the same reasons.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.

### OPINION UPON REHEARING.

It is contended by appellant in its motion for rehearing that in discussing the eighth assignment of error we erred in the statement that the bill of exceptions shows that the only permanent damage complained of in the suit by Turner was for a strip of land which in the compromise was deeded by Turner to the railroad. This was our construction of the allegations contained in the petition in that case. We do not think we erred in such construction. If, however, we were mistaken in such construction the result would be the same. The Turner suit was not reduced to judgment. It was compromised and dismissed.

O'Mahoney was not a party to the suit and it is not contended that he had any notice of the terms of the compromise. In this condition of the record the allegations contained in the petition were not competent evidence against O'Mahoney. The motion for rehearing is overruled.

Delivered January 12, 1901.