## G. C. Lockley v. Oscar Page

No. A-53. Decided May 24, 1944.
(180 S. W., 2d Series, 616)

*Scarborough, Yates & Scarborough* and *Edmund C. Yates,* all of Abilene, for petitioner.

It was error for the court to hold that there was no evidence that the taxi driver failed to keep a proper lookout. Missouri, Kansas & Texas Ry. Co. v. Sanderson, 174 S. W. (2d) 646; Hicks v. Brown, 128 S. W. (2d) 884; National Aid Life Assn. v. Driskill, 138 S. W. (2d) 238.

*House, Mercer, Edwards & Irwin, Raymond Edwards* and *R. C. House,* all of San Antonio, for respondent.

The occurrence of a collision is not of itself evidence of negligence. Rankin v. Nash-Texas Co., 105 S. W. (2d) 195; Whichita Falls Trac. Co. v. Elliott, 125 Texas 248, 81 S. W. (2d) 659.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

The following statement of the nature of the case and the result of the trial is made in the opinion of the Court of Civil Appeals:

"G. C. Lockley sued Oscar Page (Black and White Cab Company) to recover damages for personal injuries resulting from a collision between a taxicab, owned by defendent and driven by an employee, and an automobile used by plaintiff. The collision occurred at night on Pine Street in the City of Abilene. The automobile in charge of plaintiff, and in which he was seated, was standing still when struck by defendant's taxicab approaching from the rear. Plaintiff alleged negligence of the taxi-driver in the following respects:

" '1. Said taxi-driver failed to keep a proper look-out.

" '2. Said taxi-driver was driving at an excessive rate of speed.

" '3. Said taxi-driver was operating said cab at night in the City of Abilene and State of Texas, an incorporated city, in excess of twenty-five miles an hour.'

"Defendant pleaded a number of grounds of defense consisting of contributory negligence, and in addition thereto pleaded that bright lights of a third party blinding defendant's taxi-driver was the sole cause of the accident and, alternative to all defenses of contributory negligence, alleged that the collision was due to unavoidable accident.

"In a trial by jury only one of the three alleged grounds of recovery was submitted, namely, negligence consisting of a failure of the taxi-driver to keep a proper look-out. The issues involved in such ground of recovery, as well as all defensive issues submitted, were found in favor of plaintiff. From the judgment, in the sum of $1,674.00, based to the extent of $1,500.00 upon said verdict and to the extent of $174.00 upon finding made by the judge, the defendant has appealed."

The Court of Civil Appeals reversed the judgment of the

district court and remanded the cause, holding that there is no evidence to raise the issue that the driver of the taxicab was not keeping a proper look-out. 176 S. W. (2d) 991.

Plaintiff had been driving his automobile south on Pine Street in the City of Abilene pushing a friend's automobile, and immediately before the collision, had stopped the automobile on the west side of the street, according to his testimony about two feet from the gutter. Defendant's evidence was that plaintiff's automobile was nearer the center of the street. Plaintiff testified that the front and rear lights of his automobile were burning when the collision occurred, while the taxicab driver testified that they were not. The jury found, in answer to special issues, that plaintiff was not guilty of negligence in stopping or parking the automobile at the place where he had parked it just before the collision and that plaintiff did not fail to "park his car off to one side of the street." The conflict in the testimony as to whether the rear light of plaintiff's automobile was burning was also resolved by the jury in plaintiff's favor.

The driver of the taxicab, defendant's employee, testified that immediately before the collision he was traveling south on Pine street at a rate of fifteen or twenty miles an hour; that when he was not over a hundred yards from the place where the collision occurred, an automobile with bright lights came out of a gasoline service station into the street, driving toward him; that the lights blinded him; that just after the automobile passed he saw the plaintiff, Lockley, who was about three or four, or six or eight, feet from him when he first saw him; that he swerved his car and caught Lockley's back bumper. He testified further that he did not see Lockley's automobile before he hit it; that the lights of the approaching automobile blinded him and he could not see anything.

The following questions were asked and answers given on the cross examination of this witness:

"Q. Why didn't you stop?
"A. I was right in the center of the street.
"Q. Why didn't you stop when you couldn't see anything in the road?
"A. I don't know why I didn't.
"Q. But you didn't?
"A. I didn't. I just kept going at about fifteen or twenty miles.
"Q. Just kept going, taking a chance, and when you got down there, you hit this fellow?
"A. Yes.

"Q. And you didn't know that there was anybody in the street, until you hit him?

"A. No. I couldn't see.

"Q. You couldn't tell what part of the street **he was in?**

"A. Yes, I could.

"Q. How could you tell, if you couldn't see him?

"A. If you look at your front fender, you can tell."

After having testified on direct examination that plaintiff's automobile had no lights at all, the driver of the taxicab testified, on redirect examination, that if the automobile had had a light on it he could have seen it; and further that he could not see at a distance because the lights blinded him but could see far enough in front of his car to tell where he was on the street.

■ It was the jury's province to weigh all of the evidence and to decide what credence should be given to the whole or to any part of the testimony of each witness. "The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable." Stephenville N. & S. T. Ry. Co. v. Shelton (Com. App.) 208. S. W. 915, 916. It follows that the testimony of the taxicab driver that he did not see Lockley's automobile before he hit it, or until he was very close to it, and the inferences that might reasonably be drawn from that testimony were still before the jury to be considered and weighed by them, notwithstanding his testimony that he was blinded by the lights of the automobile approaching him. And that testimony and the inferences reasonably to be drawn from it should not be excluded from the court's consideration in its determination of the question whether there is any evidence in the record to support the jury's finding that the taxicab driver did not keep a proper look-out.

■ Nor should the driver's testimony that if the lights on Lockley's automobile had been burning he could have seen it be dismissed as a mere opinion. The testimony was given in answer to a question by respondent's counsel and was admitted without objection. The witness had testified that he was blinded by the lights of the approaching automobile and could not see, but it clearly appears from his testimony that he did not mean to say that he was totally blinded. He said he could not see at a distance but could see far enough in front of his automobile to tell where he was on the street. The statement that he could have seen Lockley's automobile if a light on it had been burning, even though expressed as an opinion, is explanatory of the extent

to which his ability to see was impaired and of what he meant when he said he was blinded. In our opinion, the jury's answers, that the driver of the taxicab failed to keep a proper look-out and that his failure to keep a proper look-out was negligence, are reasonably supported by the evidence above stated and discussed. That evidence briefly summarized is: The testimony of the driver of the taxicab that he did not see Lockley's automobile before he hit it; that Lockley was either three or four, or six or eight, feet from him when he first saw him; that the lights of the approaching automobile blinded him and he could not see anything; that he could not see at a distance but could see far enough in front of his car to tell where he was on the street; that although the lights of the approaching automobile blinded him when he was not over 100 yards from the place where the collision occurred, and he could not see anything in the street, he did not stop but kept on going without reducing his speed, taking a chance, until he hit Lockley's automobile; and that if Lockley's car had had a light on it he could have seen it. And the testimony of Lockley that the lights, front and rear, on his automobile were burning when the collision occurred.

We have carefully considered all of the assignments of error in respondent's brief in the Court of Civil Appeals, except the assignment relating to the recovery of $174.00 as hospital and doctor's bills (remitted by petitioner in his motion for rehearing in that court), and in our opinion none of the assignments presents reversible error.

As to the alleged misconduct of the jury in using the quotient method of determining the amount of plaintiff's damages, we have read the testimony of the jurors given on the hearing of the motion for a new trial and agree with the decision of the Court of Civil Appeals that the evidence supports the trial court's conclusion that misconduct was not shown. We approve also the ruling of the Court of Civil Appeals that there was no harmful error in the trial court's definition of the term "unavoidable accident."

The trial court did not err in refusing to submit requested issues as to the position of plaintiff's automobile in the street and as to the lights on plaintiff's automobile. The issues made by the pleadings and evidence with respect to these questions were, in our opinion, fairly submitted in the court's charge. We are of the opinion that the evidence with respect to plaintiff's earning capacity and the impairment of the same as the result of his injuries is sufficiently definite to justify the trial court's

instruction to the jury, that in determining the amount of money that would compensate plaintiff for his injuries they might take into consideration his diminished earning capacity until the time of the trial and his future diminished earning capacity, if any.

Respondent's assignments of error sustained by the Court of Civil Appeals, and which we have held should be overruled, present questions of law, that is, whether there is any evidence to support the jury's findings and not whether the evidence is sufficient.

The judgment of the Court of Civil Appeals is reversed. In view of the remittitur filed in the Court of Civil Appeals, the judgment of the district court is reformed so as to afford judgment in favor of petitioner against respondent for $1500.00, instead of $1674.00, with interest thereon from April 8, 1943, at 6% per annum and costs in district court; and as thus reformed, the judgment of the district court is affirmed. Costs incident to the appeal to the Court of Civil Appeals are taxed against petitioner and costs in this court are taxed against respondent.

Opinion adopted by the Supreme Court May 24, 1944.