# MARYLAND CASUALTY CO. v. GIDEON.

## No. 4555.

Court of Civil Appeals of Texas. El Paso.

April 14, 1948.

Rehearing Denied April 28, 1948.

Moss & Stowe, of Odessa, and Klapproth & Hamilton, of Midland, for appellant.

John J. Watts, of Odessa, for appellee.

McGILL, Justice.

This is a workman's compensation case. Appellee, James Gideon, an employee of Wolfe & Simon, electrical contractors, was accidentally injured while in the course of his employment on July 24, 1946. Appellant, Maryland Casualty Company, is the insurer, having theretofore issued its policy providing for workmen's compensation insurance to Wolfe & Simon. The accident occurred while appellee was working on a pole in Odessa. His version of what happened as shown by his testimony, is as follows:

"I was working on a pole out there between the Trico Manufacturing Company and Jake's Garage that had a feed-back. I hooked up a transformer and stepped out over an arm on the pole to come down the pole. The disconnects were open and there was a feed-back through another transformer. My left arm was around the pole and when I stepped over the arm to come down the pole I hit the disconnect with my shoulder and 13,500 volts of electricity hit my shoulder and came out my left arm and I fell twenty or twenty-five feet off the pole."

The sole controversy was as to the extent and duration of the injuries suffered by appellee. The jury found that as a natural result of the accidental injury he sustained total incapacity which began June 24, 1946 (obviously July 24, 1946) which was temporary and continued for 250 weeks, and that he had sustained or would sustain partial incapacity which was temporary and had continued or would continue for 250 weeks after the beginning thereof. They also found that the difference between appellee's average weekly wage before the accidental injury and during the period of partial incapacity was $50. Judgment was rendered in accordance with these findings and other findings which are not questioned, and a stipulated weekly compensation of $20 and payment of $191.44. Appellee has filed no brief.

Appellant presents eight points. The first three complain of the court's refusal to declare a mistrial because of the conduct of appellee's counsel during his voir dire examination of the jury panel. The following is reflected by bills of exception. Counsel stated to the panel:

"You haven't lined yourself with capital and labor and are not prejudiced against any man for the few dollars and cents he gets?"

Objection was made and he then stated:

"What I said was 'You haven't lined yourself with capital and labor and are not prejudiced against any man for the few dollars and cents he gets'"?
whereupon appellant's counsel objected, excepted and requested the Court to discharge the panel.

The Court: "Overruled, but counsel is asked to refrain from referring to anything between capital and labor which is not in this case. I don't think what has been said is sufficient to discharge the jury, but I ask counsel not to refer to these things not material to the case."

One juror stated he worked for the Gulf Oil Corporation and that it was a pretty good company, and further in answer to a question by counsel that it was a company not in court much. Appellant's counsel excepted and asked that the jury panel be discharged, whereupon counsel stated:

"He said he worked for the Gulf Oil Company and it was a pretty good company and you didn't find them in court very often."

The Court: "Overruled. Those remarks and those things I don't think are material, and can't have any effect that is worth anything unless they are intended to influence the minds of the jurors and I instruct the counsel not to say them."

Counsel: "All right."

One juror stated that he was in the refrigerator business and counsel asked him if he would put on a pretty good freeze for total and permanent disability if the evidence warranted it. Objection by appellant's counsel, and request that the panel be discharged, whereupon counsel stated:

"My remark was he said he was in the refrigerator business and I asked him if he would put on a pretty good freeze for total and permanent if the evidence permitted it."

The Court: "I am overruling this and ask that we put it in a serious nature, it takes up time. Let's don't have any more of that."

■ While we disapprove and condemn counsel's conduct as above shown, we have concluded that the court did not abuse his discretion in refusing to discharge the panel on that account. The remark referring to capital and labor is not near so inflammatory as those made in Texas & N. O. R. Co., v. Lide, Tex.Civ.App., 117 S.W.2d 479, which were made on voir dire examination and held to direct the jurors' attention to the difference in the financial ability of the contending parties and to prejudice them against the railroad company and require a reversal. This is the only case we have found where a reversal was ordered among other grounds because of the misconduct of counsel on voir dire examination. Of course the only purpose of such a statement and the only tendency it could have would be to direct the jurors' attention to the difference in the financial status of the parties and appeal to them on this ground. The statement to effect that the Gulf Oil Company was a pretty good company and "you didn't find them in court very much" could serve no legitimate pupose and an inference from it is inescapable that appellant was not such a good company since it was in court. The inquiry whether the juror would put a good freeze on for total and permanent disability was facetious and an attempt by counsel to "flirt" with the jurors and to curry their favor by undue familiarity, a practice which has often been condemned. While the conduct complained of was reprehensible and warranted a rebuke or reprimand much more severe than that implied in the language of the Court, yet we think that that language effectively removed any prejudice that may have been engendered thereby and that appellant was not deprived of any substantial right by the court's refusal to declare a mistrial. We overrule these points.

■ The fourth point complains of the Court's refusal to declare a mistrial because of the following statement of appellee's counsel during his closing argument:

"Is this Germany, or is this America?"

The argument preceding this statement as shown by the bill of exception is too lengthy to reproduce. It is somewhat incoherent, but the gist of it is that appellant's counsel had referred to one of the doctors who testified for appellee and who lived in San Angelo as the chief of his (appellee's counsel's) medical staff, and criticized counsel for paying him and for not using local doctors; that one of appellant's local doctors had testified that in all the years he had been there since 1929 he had never gone into court against an insurance company, that the local hospitals and doctors were on the payroll of the insurance companies. He then inquired: "if we got to have their paid hirelings say what we are entitled to or else we get nothing * * *," and continued:

"James Gideon they say don't look nervous—what you say * * * is this Germany or is this America?"

The court instructed the jury not to consider the remarks and denied a mistrial.

The remark may have been invited by the opposing counsel. It did not relate to any evidence in the case or to the court's charge, and was improper. Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291. However, there was no evidence that appellant was a citizen of Germany or that its counsel was of German extraction, hence the remark was not an appeal to race prejudice, as in Trachtenberg v. Castillo, Tex.Civ. App., 257 S.W. 657, wr.dis., cited by appellant. It related to the asserted theory of opposing counsel as to the method of trying the case and left the inference that that was the method which prevailed in Germany. If it was at all prejudicial it was not so inflammatory that its harmful effect could not be removed, and in view of the Court's instruction there was no error in the refusal to declare a mistrial.

■ The fifth point complains of the Court's refusal to grant a new trial because of the misconduct of the jury in arriving at its verdict by quotient and in discussing other cases and matters not in evidence. Three jurors testified on the motion for a new trial. A copy of the San Angelo Standard Times was introduced in evidence. On this paper appeared twelve sets of fig-

ures, four being 100, three 200, and five 400, a total of 13,000, which is divided by twelve, making 250, is also shown. J. A. Smithers testified on direct examination that these figures were written down representing the number of weeks each juror thought appellee was entitled to, and that before the total was added and divided by twelve it was agreed by the twelve jurors that they would abide by the result. However, we reproduce a portion of his testimony on cross-examination:

"Q. Isn't it true those figures were placed down there before the supper hour, these figures here? A. Yes.

"Q. And later, after getting that figure, you couldn't agree on a verdict, could you? A. No, sir, not until after supper.

"Q. You argued it and you said you wouldn't agree to that, after it was done, after it was totaled up there, before supper. A. Yes, I would have agreed to it, but the higher ones didn't agree to it.

"Q. You didn't agree to it until after you went to supper and came back and discussed it and took another vote. That right? A. Yes."

"Q. Did you take an oath and agree to be bound by whatever the result was? A. That is the way I understood it.

"Q. Did you take an oath and agree to be bound? A. That is the way I understood it.

"Q. Would you say all twelve of you voted to be bound by what the final sum would be? A. I don't believe I would. I believe the way we arrived at the final figure was, it was suggested we take a vote and total the number of months each twelve amounted to and then divide it by twelve and see if we could arrive at a conclusion, and that is the only figure ever put down, and so we finally arrived at a conclusion on it.

"Q. There was no agreement you would be bound by it, but an agreement you would take a vote and see if you could arrive at it? A. Yes.

"Q. After you did arrive at it, you took a vote on the 250 weeks. That it? A. Yes."

The other two jurors testified to effect that they all agreed to take a vote as a start-ing point and as a basis of further discussion, and there was no understanding that they would be bound by the number of weeks thus arrived at, that when they reached their verdict they did not consider that at all; also that it was several hours after the figure 250 was thus arrived at that they voted and agreed on this as the number of weeks of total incapacity. On this evidence the court's implied finding that there was no quotient verdict is amply supported. Page v. Lockley, Tex.Civ.App., 176 S.W.2d 991, referred to with approval on this point by Sup.Ct. in Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616, loc.cit. 618, par. 6. Galveston H. & S. A. R. Co. v. Brassell, Tex.Civ.App., 173 S.W. 522; and Coryell County v. Fegette, Tex.Civ.App., 68 S.W.2d 1066, wr.dis., and authorities there cited relied on by appellant are distinguishable. If Smithers' testimony is susceptible of no other construction than he understood that there was such an agreement to be bound by the result thus arrived at and that his assent to the verdict was induced by such understanding, yet in the absence of an agreement to be bound by the result thus arrived at there was no overt act of misconduct and such testimony could merely constitute the mental process by which Smithers arrived at the verdict and is insufficient to destroy it.

Smithers testified that he told the jury that Marvin Brummett, one of his employees, had received an award of $800.00 from the Industrial Accident Board which was later settled for $500.00, that several cases were discussed; one was a man who had been badly burned and should have received more money than he collected, and others not so injured got more than they should collect; the case of one of his men who was working at full wages and got total and permanent disability was mentioned. The juror Benton testified that Smithers told them about a case that Watts had had with an employee of his; it was not discussed more than what Smithers said; that there were some remarks made that if you collected any insurance, a lot of insurance, you had to go to court to get it; that a juror said a fellow named Hardeman got his ears burned off and face, and had sued for insurance; that he had to sue to get it.

Francis Autry, the other juror, did not remember hearing anything said in regard to other compensation cases. He did recall a remark that in order to collect insurance you had to go into court.

A careful reading of the testimony of the three jurors convinces us that Smithers' remarks (about the case of his own employee and the man who had been badly burned) were made for the purpose of inducing the other jurors to change their vote for total and permanent disability and arrive at a verdict of less incapacity. Smithers practically admitted on cross-examination that such was his purpose in making the remarks, and we think such was their effect, if any. Therefore, they could have in no way prejudiced appellant. The reference to the Hardeman case and the remark that if you collect any insurance you had to go to court to get it are more serious. However, we are unable to say that it reasonably appears from the record as a whole that injury probably resulted to appellant therefrom. Rule 327, Texas Rules of Civil Procedure; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. The medical testimony, though conflicting, was ample to support the findings of total and partial disability and the duration thereof.

The sixth, seventh and eighth points are briefed together and will be so considered. They complain of the court's refusal to enter a remittitur of its judgment in excess of 250 weeks; of the court's failure to submit to counsel for appellant the answers returned by the jury when they inquired about answering the questions before the court instructed them to answer all the questions, and of the court's failure to inquire of the jury after they had returned their verdict whether it was their intention to find 500 weeks disability permanent (total) and partial combined, or 250 weeks partial and permanent (total) combined.

Appellant's bill of exception does not affirmatively show that counsel for appellant was present in court when the jury inquired about answering the questions. If he were voluntarily absent he waived his right to be present, Pantazis v. Dallas Ry. & Terminal Co., Tex.Civ.App., 162 S.W.2d 1018, loc. cit. 1021, wr.dis., and it was not incumbent upon the court to delay the progress of the trial until he could be located and advised of the answers returned before the instruction to answer all the questions was given. To place such an onerous burden on the trial judge would unduly interfere with the orderly procedure of the trial and would be intolerable.

For the purpose of his bill of exception appellant was permitted to elicit from the jurors on the hearing of the motion for new trial testimony to effect that the jury intended to return a verdict of 250 weeks only for both total and partial incapacity. This character of testimony is utterly without force or effect to impeach the verdict rendered or to have authorized the trial court to direct a remittitur under Rule 328, T.R.C.P. because the verdict was not equitable or because the damages were manifestly too much, or to authorize this court to require a remittitur under Rule 440, T.R.C.P. The verdict is unambiguous; there is no contention that there was a unanimous mistake of the jury in the nature of a clerical error in writing or reporting their verdict as to total and partial disability or the duration thereof so as to warrant relief under the holding in Caylat v. Houston E. & W. T. R. Co., 113 Tex. 131, 252 S.W. 478, cited and distinguished in Commercial Standard Insurance Co. v. Miller, Tex.Com.App., 48 S.W.2d 618. The proposition is in effect that because the jury did not understand the effect of the verdict which they intentionally rendered, appellant is entitled to relief—in other words, that they answered the issues as they did under a mistake as to the meaning thereof. To state the proposition is to refute it. McKelvey v. Chisholm, Tex.Civ.App., 184 S.W. 2d 508; Bradley v. Texas & Pacific R. Co., Tex.Com.App., 1 S.W.2d 861, citing Ellerd v. Ferguson, Tex.Civ.App., 218 S.W. 605. The situation is analogous to an attempt by a juror to destroy his verdict by testifying to the mental process by which he reached same. That this is never permissible is well settled. Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642; Barrington v. Duncan, supra.

We find no reversible error. The judgment is affirmed.