**G. A. BURBRIDGE et ux., Appellants,**

**v.**

**RICH PROPERTIES, INC., Appellee.**

No. 14078.

Court of Civil Appeals of Texas.

Houston.

Feb. 28, 1963.

Rehearing Denied March 21, 1963.

**658**

Ray Stevens, Roy Simmons, Jr., Houston, for appellants.

Joel W. Cook, Houston, for appellee.

COLEMAN, Justice.

This is an appeal from a judgment for the damage suffered by appellee, Rich Properties, Inc., caused by water impounded on the property owned by G. A. Burbridge and wife, appellants, seeping or flowing into property owned by appellee; enjoining appellants from permitting water to be impounded on their property or permitting the flow or seepage of water from their property onto or against the south wall of a building owned by appellee; requiring the removal of part of a building owned by appellants, and enjoining them from erecting future buildings using the wall of appellee's building as one of such future building's walls, and from erecting a wall not of masonary construction 8 inches or more in thickness within 13 inches of appellee's building; and restraining appellants from installing air conditioning equipment or awnings which project on or over the property owned by appellee.

Appellants have briefed three points of error, reading:

"*First Point.* This case should be reversed because the Special Issues submitted to and answered by the jury do not support the judgment entered by the trial court.

"*Second Point.* This case should be reversed and rendered for Defendants because the trial court erred in not sustaining defendants' Motion for Judgment.

"*Third Point.* The trial court erred in not sustaining Defendants' Motion to disregard Special Issues No. 3, 4, and 8."

All of these points are too general and are multifarious. Texas Emp. Ins. Ass'n v. Logsdon, Tex.Civ.App., 278 S.W.2d 893, ref., n.r.e.; Colorado River Western Ry. v. Texas & N. O. R. Co., Tex.Civ.App., 283 S.W.2d 768, ref., n.r.e.; Jones v. Hortenstine, Tex.Civ.App., 291 S.W.2d 761; McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643; Carrick v. Hedrick, Tex.Civ.App., 351 S.W.2d 659.

Where a point of error presented by appellant's brief is imperfectly drawn, but is sufficient to direct the court's attention to an error on the part of the trial court, this Court is only required to pass on the merits of the point of error in the light of the statement thereunder. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478; Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197.

A careful consideration of the argument and statement contained in appellants' brief under Point One leads to the conclusion that it is appellants' contention that the award of damages to appellee is not supported by the verdict of the jury in that such verdict does not establish either the impoundment or diversion of water in violation of Article 7589a, Vernon's Ann.Civ.St., or the maintenance of a nuisance by appellants. It is appellants' contention that these were the only theories of recovery supported by the pleadings on which the trial was held, other than a cause of action based on negligence which was expressly abandoned.

Article 7589a, V.A.C.S., provides:

"It shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this State or to permit a diversion thereof caused by him to continue after the passage of this Act or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this Act in such manner as to damage the property of another, by the

overflow of such water so diverted or impounded, and that in all such cases the injured party shall have remedies, both at law and in equity, including damages occasioned thereby, * * *."

In Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 85 A.L.R. 451, the Supreme Court considered the history of the subject of surface water rights and the state of the law in Texas prior to the adoption of the Act of 1915, the provisions of which are now incorporated in Article 7589a, supra, and said: "The act of 1915 changed the rule and gave a cause of action where the owner of one estate so used his property as to injure an adjacent tenement." The court further held:

"The word 'overflow' is, of course, capable of the meaning attributed to it by the Court of Civil Appeals—that is, 'to flow over the bounds, over the brim'—but its meaning also is, 'to flow over; to cover with or as with water or other fluid; to spread over, to inundate.' Webster's New International Dictionary. Giving the word the meaning just quoted from the dictionary, it is apparent when one wrongfully diverts surface water and causes it to flow over another's land, causing damage, his acts are within the prohibitory terms of the statute, and a cause of action arises."

In Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221, the court rejected the doctrine that one who impounds surface water on his premises, and without negligence on his part, permits the escape of such water, is liable for the damage caused thereby to the lands of another, announced in Rylands v. Fletcher, L.R. 3, H.L. 330. The court also discussed Texas & P. R. Co. v. O'Mahoney, 24 Tex.Civ.App. 631, 60 S.W. 902, and Texas & P. R. Co. v. Frazer, Tex.Civ.App., 182 S.W. 1161. In the O'Mahoney case the railroad company constructed an artificial pond on its own land, by means of a dam diverted a natural stream thereto, and maintained the water level so high that by reason of its pressure the water percolated through the dam and destroyed plaintiff's land. Referring to this case the Supreme Court said:

"It is obvious from the statement made by the court that the railroad company had not only created a nuisance as a matter of undisputed fact, but had, in violation of the Constitution, substantially taken a portion of O'Mahoney's property; and, of course, in such a case proof of negligence was not necessary."

In referring to the Frazer case, the Supreme Court said:

"This *tortous* act of the railway company in diverting surface water from its natural course, and concentrating it above the plaintiff's land in this case, was the real basis of the action, and as to which there was no dispute. Had no reservoir been constructed and the diverted waters been thrown upon the plaintiff's land to his damage, he would have had a cause of action without the necessity of alleging negligence." (emphasis supplied)

While in the Turner case the court held that there was no liability for damage caused by the escape of salt water from a pond without proof of negligence, it specifically pointed out that the suit was not brought for the wrongful diversion or impounding of surface waters to another's injury and that Article 7589a had no application to the case.

In Blocher v. McArthur, Tex.Civ.App., 303 S.W.2d 529, ref., n. r. e., a landowner raised the level of his lot, causing rain water to concentrate on the five feet of property between his neighbor's basement apartment and his property line and to overflow through a window into the apartment. On the complaint of his neighbor, and at the neighbor's suggestion, a retaining wall high enough to prevent the overflow was constructed, which caused the water held be-

hind the wall to seep through the ground into the apartment. There were jury findings that the plaintiff was negligent in failing to provide adequate drainage, and in failing to construct the apartment in a good and workmanlike manner so as to prevent subsurface water seeping into the apartment. There were also jury findings that the defendant diverted the natural flow of surface waters from his property to that of plaintiff and created a nuisance by building the retaining wall, and that both of these actions were proximate causes of the plaintiff's damage. The trial court entered a take nothing judgment which was reversed and rendered and recovery was allowed for the damage which occurred after the wall was constructed as well as for that sustained prior to its construction.

The court held that the undisputed evidence showed that the retaining wall was an instrumentality causing the diversion of surface water, which flowed into plaintiff's apartment, and that by reason of Art. 7589a defendant was liable for the resulting damage. The court also held that the plaintiffs were not estopped to recover the damage resulting from the nuisance created by the construction of the retaining wall, and consequent impounding of surface water, by reason of the fact that the wall was constructed at their request since there was no finding that they could have reasonably anticipated that the wall could cause water to seep into the apartment.

"It is the generally accepted view that a landowner has no natural right, by means of any building or other structure placed on his land, to discharge on adjoining premises the water which may accumulate from snow or other natural causes. Therefore one who constructs a roof in such a way that it will manifestly collect water and discharge it on the adjoining land is guilty of a trespass and liable for all damages resulting therefrom. The above statement applies, not only when water is discharged directly from the building to an adjoining land, but also where it falls first on the premises where it accumulates and then flows on the adjoining premises. R.C.L. vol. 1, pp. 374 and 374, and cases cited in notes. Such continuing trespass is considered a private nuisance, and the adjoining owner is entitled to an injunction restraining its maintenance in such manner that the rain formed thereon will not injure his property. R.C.L. vol. 20, pp. 434 and 435, and cases referred to in the notes." Shuttles v. Butcher, Tex.Civ.App., 1 S.W.2d 661, err. ref.

■ The trial court was not required to submit special issues to the jury as to facts which were not in dispute. Wright v. Vernon Compress Co., 156 Tex. 474, 296 S.W. 2d 517.

In this case certain facts are established by the evidence without dispute. Appellants and appellee owned adjoining lots. At about the same time they began construction of improvements on their lots. Appellee built a masonry building up to or over the common property line. Appellants poured a concrete floor on the area between the south wall of appellee's building and an existing structure on their lot, and in front of this structure up to the building line on San Jacinto Street. Appellants constructed a wall along the front building line and then, using the south wall of the Rich Building as their north wall, constructed a roof over the paved surface which was flashed into the wall of the Rich Building and joined to the old house. The area between the old house and a garage at the back of it was also roofed over and enclosed. In 1956 the same parties reached an agreement in compromise of a pending lawsuit whereby the boundary line between their lots was established and appellee agreed that appellants could continue their use of the south wall of the Rich Building until "Burbridge's said building is altered where same abuts upon said Rich Building."

In 1959 the old structure forming part of the Burbridge Building was damaged by fire to such an extent that it had to be removed. The roof of that part of the new construction fronting on San Jacinto Street was damaged and some of the rafters and studs adjoining the south wall of the Rich Building were charred to the extent that they had to be removed when that portion of the building was repaired. Appellants were unable to secure a building permit from the City of Houston to repair the portions of the building remaining after the center structure was removed. However, during 1960 they made repairs without a permit sufficient to keep out water.

G. A. Burbridge testified that prior to January, 1960, the hole in the roof of the front structure had been repaired so that it would turn water, but that it was possible that water could enter from the east where it had joined the old building. He said that there was water about an inch high in his building when he inspected it after a complaint by appellee. In answer to the question: "Actually, there is water standing in there quite frequently, isn't there?" he testified that he did not recall seeing water standing there quite frequently. He testified that he went over there once in a while, but not after every rain.

There was other testimony by interested witnesses that water was standing in that part of the building following every rain after the fire and before the roof and east wall were replaced. Herbert C. Cowell, an architect called as a witness by appellee, testified that in August, 1960, he inspected the premises by court order with the permission of the parties, and that he made tests which demonstrated that water accumulating in a pool in the front part of the Burbridge Building would remain in a depression adjacent to the south wall of the Rich Building and would seep into the floor area of the Rich Building. He also testified that water accumulating in the area where the old building stood flowed into the front part of the Burbridge Building and then would seep

through the wall into the Rich Building. Pictures introduced into evidence and identified by both parties demonstrate that rain would unquestionably enter the front portion of the Burbridge Building. While there was a conflict of testimony as to where the water which seeped into the Rich Building entered, there was no denial that water accumulated in the Burbridge Building or that water seeped into the Rich Building.

The jury found that substantial quantities of water entered the Rich Building from the Burbridge Building. This finding, together with the undisputed evidence that water was permitted to accumulate in the Burbridge Building, required the rendition of that part of the judgment awarding damages.

Appellants contend that the trial court erred in not sustaining their motion to disregard Special Issues Nos. 3, 4 and 8. No motion to disregard the answers to special issues is found in the transcript, however appellants' motion for judgment does contain such a request. This motion for judgment will be considered as a motion for judgment notwithstanding the verdict. Since the trial court was requested to disregard the answers to Issues 3, 4 and 8 for assigned reasons, and since the motion for new trial called the trial court's attention to the claimed errors, this assignment may be considered by this Court. Jinks v. Whitaker, Tex.Civ.App., 195 S.W.2d 814, error ref., n. r. e. 145 Tex. 318, 198 S.W.2d 85.

The trial court is authorized to disregard the answer to a special issue only where there is no evidence having probative force upon which the jury could have made the answer. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194. In this case the Supreme Court reaffirmed the rule set out in Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616, reading:

"It was the jury's province to weigh all of the evidence and to decide what

credence should be given to the whole or to any part of the testimony of each witness. 'The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable.' Stephenville, N. & S. T. R. Co. v. Shelton, Tex.Com.App., 208 S.W. 915, 916."

Applying these rules, it is clear that the trial court did not err in refusing to disregard the jury findings.

 Appellants urge that the action of the trial court in denying their motion for judgment was error because even though the pertinent findings of the jury are considered there is no sufficient basis for the rendition of a judgment for appellee. Appellants' point of error does not single out any particular part of the trial court's judgment as being erroneous. We have held that appellee was entitled to a judgment for damages. Judgment on the entire case could not have been rendered for appellants. Appellants' point, therefore, does not present error.

In the argument under Point of Error No. Two, appellants say that certain issues should be disregarded because they are evidentiary in nature and constitute comments on the weight of the evidence. The trial court is not authorized to disregard the answer to an issue for such reasons. Rule 301, Texas Rules of Civil Procedure.

The jury found that the Burbridge Building was altered by appellants after the contract of October 2, 1956, and that appellee will suffer damage unless the Burbridge Buildings are made to conform to the requirements of the Building Code of the City of Houston. Since the building has been altered, appellants no longer have a contractual right to use the south wall of the Rich Building and, under the terms of the contract, must erect their own wall. Applicable ordinances of the City of Houston were in

evidence. The findings of the jury, together with facts established by the undisputed evidence, authorize the injunctive features of the judgment of the trial court.

The judgment of the trial court is affirmed.