Dale HARLOW, Appellant,

v.

SWIFT AND COMPANY, Appellee.

No. 4539.

Court of Civil Appeals of Texas, Eastland.

Feb. 23, 1973.

Rehearing Denied March 16, 1973.

Hammett, Hammett & Cavness, James A. Builta, Lampasas, Senterfitt & Adams, Reuben Senterfitt, San Saba, for appellant.

Johnson, Slagle & Bell, L. B. Slagle, Brownwood, for appellee.

McCLOUD, Chief Justice.

Plaintiff, Dale Harlow, sued defendant, Swift and Company, for damages allegedly suffered because Swift sold and delivered to plaintiff lamb feed which was unfit for the use for which it was intended. The jury answered all liability issues in favor of defendant. Judgment was, however, entered for plaintiff for $5,973.10. This amount was determined by deducting a sum, owed to Swift by Harlow for feed, from an amount owed to Harlow by Swift for the purchase of lambs. Defendant admitted in its answer it owed the $5,973.10. The judgment further provided that all other relief prayed for by plaintiff was denied. Court costs were adjudged against plaintiff, Dale Harlow, and he has appealed. We affirm.

Plaintiff contends that Swift sold and delivered feed which was unreasonably dangerous and unfit to be used as a self-feeding, free-choice, complete lamb starter. He says that after eating the feed, 1,017 lambs died and many others became sick and he was required to expend money for medication and veterinarian bills. Swift argues that its feed was not unfit and any loss suffered by plaintiff was occasioned by misuse of its product by Harlow. Defendant contends it had advised Harlow that certain feeding directions were to be followed, that the directions were not followed, and that plaintiff voluntarily and unreasonably proceeded to encounter a known danger or a danger which plaintiff should have known.

Plaintiff contends first that the judgment should be reversed because of jury misconduct. At the hearing on motion for new trial, juror Jacobs testified that juror Jordan told her, during the trial while the jury was assembled in the jury room, that he had a conversation with a lady in San Saba or San Saba County who told him that Dale Harlow was not entitled to anything because everything he had he had gotten from suing other companies.

Jordan testified that he did have a conversation with juror Jacobs similar to the conversation she related but that such conversation took place after the trial was over and not during the trial. He testified further that the conversation with the lady took place in Mills County, not San Saba, while he was on official social security business, during a trial recess. He testified the statement was made by the wife of a man he had gone to interview; that he was talking to the lady while waiting for her husband; that he didn't mention he knew anything about who she was talking about; that the lady said something about the trial in Brownwood and that Harlow had sued another company before, but he couldn't recall exactly how she said it; that evidently Harlow had been successful in a suit with a feed company, or something of this sort, and she was just kind of rambling about it and he changed the sub-

ject. He testified further that it was a thing of short duration and if she had gone into it and discussed it, he would have had to tell her he was on the jury; that she kind of made a catch-all statement; and, that he thought it would be over quicker if he just ignored it and went on to something else. He stated the essence of what she said was that Harlow had come into some amount of money through lawsuits and that was the money he was not entitled to. Jordan testified he did not report the incident to the trial judge; that in the course of his business he was often chewed out, stomped, discussed, and so forth by everybody in the country, and that he heard an awful lot of hearsay. He also stated that the remarks made by the outsider did not influence him in any way in reaching his verdict. We cannot consider this statement by Jordan because it is not permissible to allow a juror to preserve or destroy his verdict by testifying to the mental processes used in reaching his verdict. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943).

Each of the remaining jurors testified and none heard the alleged conversation between jurors Jacobs and Jordan or any similar information discussed by any of the jurors at any time.

Plaintiff also argues that statements made by juror Beaird show the juror was biased and prejudiced against Harlow. Vernon Jacobs, husband of the juror Jacobs, testified by deposition that he talked with juror Beaird shortly after the trial ended and Beaird stated to him "A man that'll do that, I wouldn't give him nothing if he had it coming." Juror Beaird testified the first knowledge he had that Harlow had other claims against other feed companies was four to six days after the trial. Further, he testified he did not make the statement testified to by Vernon Jacobs.

A review of the testimony given at the hearing on the motion for new trial shows that it is uncontroverted that during a re-

cess a lady in Mills County stated to juror Jordan that Harlow had gotten a lot of money he was not entitled to by suing some other company. It is, however, highly controverted as to whether Jordan told Jacobs about the conversation during the trial. Jacobs said that her conversation with Jordan took place during the trial, but Jordan said the conversation occurred after the trial. Also, the alleged remark by juror Beaird is controverted. Beaird said he made no such remark to Vernon Jacobs and further that he knew nothing about Harlow's prior lawsuits until after the trial was over.

■ The trial court did not file express findings of fact and conclusions of law even though requested by plaintiff. Plaintiff argues that such failure constituted error. We disagree. When confronted with this argument, we think the Court in Warner v. Plummer, 355 S.W.2d 817 (Tex.Civ. App.—Waco 1962, writ ref'd n. r. e.), correctly stated the rule as follows:

"We are asked to reverse because the court failed to file findings of fact and conclusions relating to alleged jury misconduct and communications of counsel in the hearing on their motion for new trial as requested by appellants under Rule 296, Texas Rules of Civil Procedure. That Rule applies to a 'trial by the court.' In Eichelberger v. Rankin, Tex.Civ.App., 278 S.W.2d 278, writ ref. n. r. e., Justice Norvell wrote that under the Rule 'a trial judge is not required to file findings and conclusions as to matters raised upon a motion for new trial in a jury case, Connor v. Heard & Heard, Tex.Civ.App., 242 S.W.2d 205.' See also Viking Construction Co. v. Beaird, Tex. Civ.App., 337 S.W.2d 699, 704. We are urged to overturn the rule. We think it is sound."

■ Where the trial court does not file express findings it is presumed on appeal that the trial court found all controverted facts in support of its judgment overruling the motion for new trial and

that no misconduct occurred. If the evidence offered at the hearing on the motion for new trial is conflicting as to whether misconduct occurred, the decision of the trial court on the question is binding on appeal. Brawley v. Bowen, 387 S.W.2d 383 (Tex.Sup.1965); In re Estate of Moore, 464 S.W.2d 428 (Tex.Civ.App.— Eastland 1971, writ ref'd n. r. e.).

Here, the trial court impliedly found that the alleged conversation between jurors Jacobs and Jordan did not take place during the trial as related by Jacobs. The court also impliedly found that juror Beaird did not make the statement testified to by Vernon Jacobs. Since these alleged acts of misconduct were controverted we are bound by the trial court's implied finding that such alleged misconduct did not occur. It is, however, uncontroverted that the lady in Mills County made the statements to juror Jordan.

■■ One complaining of jury misconduct has the burden to prove not only the overt act of misconduct, but also that it was material misconduct, and from the record as a whole that injury probably resulted. Rule 327, Texas Rules of Civil Procedure; Fountain v. Ferguson, 441 S.W.2d 506 (Tex.Sup.1969). Whether misconduct did in fact occur is a fact question and whether injury probably resulted is a question of law. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259 (1944).

We have carefully examined the entire record and hold that plaintiff has not sustained his burden of showing probable injury. We must judge the degree of misconduct. Pope, Jury Misconduct and Harm, 12 Baylor L.Rev. 362. The trial court impliedly found that only one juror, Jordan, was involved. No other juror heard or participated in the misconduct. The remark made by the outsider was unsolicited, of short duration, somewhat general, and the subject was changed by Jordan. We overrule plaintiff's jury misconduct points. St. Louis Southwestern Railway Company v. Gregory, 387 S.W.2d 27 (Tex.Sup.1965); Putnam v. Lazarus, 156

Tex. 154, 293 S.W.2d 493 (1956); Trousdale v. Texas & New Orleans Railroad Co., 154 Tex. 231, 276 S.W.2d 242 (1955).

■ Plaintiff next complains of the failure of the jury to find the feed was unfit for use as a self-feeding, free-choice, complete lamb starter. Plaintiff also attacks jury findings that he knew or should have known that the feed was unusually dangerous for feeding free-choice as a complete starter feed; that he voluntarily and unreasonably proceeded to feed such feed free-choice to the lambs; and that he sustained no damages as a result of using the feed. Plaintiff says there is no evidence to support the findings; the evidence conclusively establishes contrary findings; the evidence is factually insufficient, and the findings by the jury are against the great weight and preponderance of the evidence.

Swift contended there was nothing wrong with the feed and the problems encountered by plaintiff resulted from his failure to follow instructions as to the proper manner of using the feed.

There is evidence in the record that the feed was fit but that Harlow failed to restrict the amount of feed fed the first few days and also that he failed to provide hay for the lambs. There is evidence Harlow was told that the feed had to be restricted and hay provided for the first few days. There was testimony that the watering facilities were not adequate. There was testimony that the lambs were under stress and many had "dry mouth". There was evidence the lambs would have been under stress on the day they were brought to the feed lot and stress included an element of hunger. The record contains testimony that plaintiff would have had no problem feeding the feed if he had followed the directions given by Swift's employee and described on the feed tags. There is testimony that the feed itself would not create a problem and if a problem were created by feeding the feed, it would be management or disease or some other factor.

The statement of facts contains over 2,000 pages. Numerous expert as well as lay witnesses testified. The issue of whether plaintiff's damages resulted from unfit feed or unwise practices was hotly contested. The jury decided the issue in favor of Swift.

It is the peculiar and exclusive province of the jury to pass upon the credibility of witnesses and the weight to be given their testimony. Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616 (1944). Also, the general rule is that evidence given by an interested witness, even though uncontroverted, presents an issue to be determined by the jury. Flack v. First Nat. Bank of Dalhart, 148 Tex. 495, 226 S.W.2d 628 (1950); Texas Employers' Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80 (Tex.Com.App.1940).

We hold that there is some evidence of probative force to support the jury findings. We further hold, after reviewing the entire record as required by In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), that the evidence is not factually insufficient to support the jury findings under attack, nor are the jury findings against the great weight and preponderance of the evidence.

Plaintiff also argues that while testifying the witness Hoyle violated a previous order of the court granting plaintiff's motion in limine. The order in limine prohibited mention of "any other litigation by the plaintiff against any feed company involving alleged defective . . . feeds, . . . or regarding any claims, judgments or trials relative thereto . . . ." Hoyle testified he went to see plaintiff about collecting an account owed Swift. When asked about his conversation with plaintiff, Hoyle stated: "He said that he wouldn't—he wouldn't pay us because he—because he wanted some settlement on some bad feed he had gotten." A few minutes later Hoyle testified: "I asked him why he didn't just go ahead and pay us, and he said that he'd rather not, he could get a better settlement if he—if he owed us. *Said he'd been through this before.*" Plaintiff says the emphasized portion of Hoyle's statement violates the order in limine. We disagree. The context of Hoyle's statement is that plaintiff was seeking a settlement because of some bad feed. He was not going to pay Swift because he could get a better settlement if he owed Swift. He said he had been through this before. This statement, in our opinion, does not disclose to the jury that plaintiff has had prior claims or suits against a feed company for defective feed.

Immediately after the statement was made by Hoyle, the attorneys approached the bench and the jury was retired. The Court and attorneys discussed briefly the statement and the order in limine. Plaintiff did not object to the evidence before the jury, move for a mistrial, request the court to instruct the jury not to consider the evidence, or file a motion to strike the statement from the record. Assuming the statement was inadmissible, plaintiff waived his right to complain. Bituminous Casualty Corporation v. Jordan, 351 S.W.2d 559 (Tex.Civ.App.—Waco 1961, no writ hist.); Pressley v. Smith, 288 S.W.2d 893 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.). Furthermore, if we are in error, and Hoyle's statement constituted error, then we hold that such error was not reversible error because the statement was not calculated to cause and probably did not cause the rendition of an improper judgment. Rule 434, T.R.C.P.; Bridges v. City of Richardson, 163 Tex. 292, 354 S.W.2d 366 (1962).

Plaintiff further complains of the trial court adjudging court costs against him. Plaintiff argues that he was the successful party under Rule 131, T.R.C.P., as evidenced by a judgment in his favor for $5,973.10. We do not agree that plaintiff was the "successful" party. Plaintiff sought damages for $121,512.00 because of the alleged defective and dangerous feed. After an extensive trial the jury denied

this requested relief. Defendant admitted in its answer that it owed plaintiff $5,973.-10 and alleged a draft for such sum had been previously delivered to but not accepted by plaintiff. Defendant alleged that it stood ready to honor such draft. Plaintiff says the trial court failed to state "on the record" the reason for adjudging costs against him. We disagree. The judgment recited: "And the Court further finding from the pleadings of both parties and from the undisputed evidence including the admission of the Defendant in open court that it is indebted to plaintiff in the sum of . . . $5,973.10 . . ." We hold that the trial court did not abuse its discretion in adjudging court costs against plaintiff. Rules 131 and 141, T.R.C.P.; Martin v. J. S. Hunt Lumber Co., Inc., 180 S.W.2d 956 (Tex.Civ.App.—Waco 1944, no writ); Bush v. Bush, 265 S.W.2d 676 (Tex.Civ. App.—El Paso 1954, writ dism.).

We have considered all points of error and all are overruled. The judgment of the trial court is affirmed.