Duncan BURCH and Deja Vu, Inc.
d/b/a Rocking D Ranch,
Appellants,

v.

D.L. HANCOCK, Appellee.

No. 12–00–00288–CV.

Court of Appeals of Texas,
Tyler.

Aug. 1, 2001.

Charles Quaid, Dallas, for appellants.

Brad McCampbell, Emory, for appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

GRIFFITH, Justice.

Duncan Burch ("Burch") and Deja Vu, Inc. ("Deja Vu") d/b/a Rocking D Ranch (collectively "Appellants") appeal the trial court's judgment in favor of Appellee, D.L. Hancock ("Hancock"). In five issues, Appellants contend that the evidence was both legally and factually insufficient to support certain findings made by the trial court and the judgment as a whole. We affirm.

### BACKGROUND

Deja Vu owns and operates a ranch in Emory, Rains County, Texas under the assumed name of Rocking D Ranch (the "ranch"). The ranch consists of approximately 3,400 acres of land, approximately 1,800 acres of which is owned by Deja Vu and the remaining 1,600 non-contiguous acres, which is owned individually by Burch, the president of Deja Vu. Burch leases the land he owns to Deja Vu. On or about August 1, 1998, Hancock met with Burch about grinding stumps at the ranch. Approximately six acres of land containing timber had been cleared and the stumps had to be removed so that the land could be planted for cattle grazing. The record reflects that Hancock and Burch met alone and agreed that Hancock would grind stumps on the ranch and would be paid five dollars for each stump ground, regardless of size. Hancock testified that, at the time he entered into the agreement, he knew nothing about Deja Vu and thought that Burch owned the ranch. The evidence is undisputed that, during this meeting, Burch never stated to Hancock that he was acting as agent of Rocking D Ranch, Deja Vu, or anyone else.

Initially, a system was devised whereby utility flags were placed by each stump to be ground. As Hancock ground the stump, he would pick up the flag and turn it in to the ranch foreman, Greg Paige ("Paige"). However, after two weeks, the flagging system was abandoned, and instead, Paige simply showed Hancock generally the area in which he could grind stumps. Hancock testified that he kept track of the number of stumps ground by making a mark on his stump-grinding machine each time he finished grinding a stump. Although other ranch employees were present in the general vicinity as Hancock ground stumps, his work was not closely supervised.

Hancock was instructed by Paige to make his invoices out to the ranch. Hancock prepared invoices for the first two weeks of work as instructed and submitted them to the ranch. Hancock received payment on the first two invoices by check from Deja Vu. Hancock continued to grind stumps.

Hancock submitted a third invoice to the ranch in the amount of $2,495.00.[1] Soon thereafter, the record reflects that Burch became suspicious that Hancock had not ground as many stumps as he claimed in the invoices submitted. There is evidence that Burch sent a ranch employee to closely monitor Hancock's future stump-grinding activities. There is further evidence that when Hancock was advised of such supervisory arrangements, he walked off the job. However, according to Hancock, Burch, who believed that it was simply not possible for a man to grind one hundred stumps in a day, accused Hancock of lying about the number of stumps he claimed to have ground and told Hancock to get off his property. At the suggestion of Jim Burch, Burch's father and ranch employee, Hancock returned to the ranch to discuss payment arrangements with Burch. However, the record reflects that Burch ignored Hancock, and, having grown weary of waiting, Hancock left. On September 9, 1998, Hancock sent Burch a letter by certified mail demanding payment.

The record reflects that Burch made a visual inspection and count of the number of stumps ground shortly following Hancock's departure, and that Burch counted significantly fewer stumps ground than claimed by Hancock on the invoices. Approximately three months later, during

---

1. The record reflects that this amount, which Hancock testified was a mistake, was corrected by a subsequent invoice in the amount of $2,405.00.

which time the evidence reflects that the land in question was subjected to flooding, plowing and cattle grazing, Burch paid two individuals, Wayne Luckett ("Luckett") and Gordy Nix ("Nix"), to independently determine the number of stumps ground using, in addition to visual surveillance, a metal probe. Both Luckett and Nix testified that they counted fewer stumps ground than claimed by Hancock, but admitted that probing for ground stumps, which are not necessarily visible above the surface, is not an exact science.

### STANDARD OF REVIEW

■ In reviewing a no evidence point, we must consider only the evidence and inferences that tend to support the verdict, disregarding all contrary evidence and inferences. *See Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998). We may only sustain a "no evidence" point when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). It is not within our power to second guess the fact-finder unless only one inference can be drawn from the evidence. *See Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 461 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *See Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993).

■ On the other hand, when evaluating a factual sufficiency challenge, we will consider and weigh all of the evidence in the case, both evidence supporting the verdict and evidence which tends to contradict the facts upon which the fact-finder based its verdict. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We may not substitute our conclusions for those of the fact-finder and will reverse only if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

### INDIVIDUAL LIABILITY OF AGENT ON CONTRACT

■ In their first three issues, Appellants contend that the trial court erred in finding Burch individually liable on the contract. We disagree. Regarding the liability on corporate contracts, officers of corporations are in the same position as agents of private individuals. *See A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex.App.-Austin 1986, writ ref'd. n.r.e.). In order for an agent to avoid personal liability on a contract, he has the duty to disclose not only that he is acting in a representative capacity but also the identity of his principal. *Id.* The party with whom the agent deals has no duty to discover the principal. *Id.* The inference that the agent is a party to the contract exists until the agent gives such complete information concerning the principal's identity that the principal can be readily distinguished. *Id.* If the other party has no reasonable means of ascertaining the principal, the inference prevails unless the parties have agreed otherwise. *Id.; see also* RESTATEMENT (SECOND) OF AGENCY § 321, cmt. a (1958). In other words, disclosure of an agency is incomplete for the purpose of relieving an agent from personal liability unless it included *the name* of the principal. *See Burris*, 714 S.W.2d at 435 (emphasis in original). Furthermore, the use of a tradename is generally an insufficient disclosure of the principal's identity and the fact of agency so as

to protect the agent against personal liability. *Id., citing Carter v. Walton,* 469 S.W.2d 462, 471 (Tex. Civ. App.–Corpus Christi 1971, writ ref'd n.r.e.); *Lachmann v. Houston Chronicle Publ'g Co.,* 375 S.W.2d 783, 784–85 (Tex.Civ.App.-Austin 1964, writ ref'd n.r.e.). An agent cannot claim immunity from personal liability merely because the party with whom the agent dealt had a means of discovering the agent's representative capacity. *See Burris,* 714 S.W.2d at 435, *citing Anderson v. Smith,* 398 S.W.2d 635, 637 (Tex.Civ.App.-Dallas 1965, no writ). The test of disclosure is the other party's knowledge, or reasonable grounds to know of the principal's existence or identity, irrespective of the source from which the other party obtains it. *See Burris,* 714 S.W.2d at 435, *citing Johnson v. Armstrong,* 83 Tex. 325, 18 S.W. 594, 595 (1892). However, in making this determination, we must look at the time the contract was entered into. *See Lacquement v. Handy,* 876 S.W.2d 932, 940 (Tex.App.-Fort Worth 1994, no writ). Knowledge of the real position of affairs acquired after a cause of action has accrued cannot affect the right to recover from the agent personally on a contract. *See Dodson v. Peck,* 75 S.W.2d 461, 463 (Tex.Civ.App.–Amarillo 1934, writ dism'd w.o.j.).

■ In the case at hand, the record reflects that Hancock and Burch met alone and agreed that Hancock would grind stumps on the ranch and would be paid five dollars for cash stump ground, regardless of size. Hancock testified that, at the time he entered into the agreement, he knew nothing about Deja Vu and thought that Burch owned the ranch. The evidence is undisputed that, during this meeting, Burch never stated to Hancock that he was acting as agent of Rocking D Ranch, Deja Vu, or anyone else. However, Appellants, relying heavily on *Armstrong,* contend that other circumstances existed sufficient to put Hancock on notice that he was dealing with Burch in his capacity as officer of Deja Vu.[2]

In *Armstrong,* architects hired to prepare plans for buildings for a college attempted to hold the president of the college, who had hired them, personally liable on the contract. *See Armstrong,* 18 S.W. at 594–95. The court concluded that, from the totality of the circumstances, the architects should have known that the buildings were for the college and not for the president who hired them. *Id.* at 595. The *Armstrong* opinion implies that the architects did in fact know that they were dealing with the college. *See Posey v. Broughton Farm Co.,* 997 S.W.2d 829, 832 (Tex. App.-Eastland 1999, pet. denied). The facts in *Armstrong* are not analogous to the instant case. It is undisputed that only Burch and Hancock were present during the negotiations of the stump-grinding agreement. Hancock claims no actual knowledge that Burch was acting on behalf of Deja Vu.

---

2. The circumstances Appellants specify are: (1) the size and overall scope of the ranch and operations; (2) the number of employees and amount of equipment on the property; (3) the knowledge of reputation in the small community in which the parties live in Emory, Texas; (4) the knowledge of the corporate trade name of Rocking D Ranch; (5) the fact that the foreman of the ranch..., who was employed by Deja Vu..., and was good friends with Hancock and his brother, was aware of the corporation, and instructed Hancock to invoice the ranch and send the invoices to the corporate office in Dallas, Texas, all of which Hancock did; (6) the checks to Hancock were issued from Deja Vu, Inc.; (7) the amount sued upon in this litigation was done at a time when it was actually known to Hancock that Deja Vu, Inc. owned the ranch and knowing this fact, he continued to do the work; and (8) Hancock initially sued Jim Burch.

Hancock filed suit on a sworn account against Burch. At trial, Burch offered no testimony that he had made any disclosures to Hancock that he was acting as officer of Deja Vu. The surrounding circumstances cited by Appellants, which they contend should have put Hancock on notice that he was contracting with a corporation, are primarily based on the assumption that in a small community, such as Emory, every member of the community surely knows the legal status of the large ranches and other businesses in that community. We disagree with Appellants' logic. It is not inconceivable that a 3,400 acre ranch, with extensive operations could be owned by an individual. Indeed, 1,600 acres of Rocking D Ranch was owned by Burch individually. Further, it is not beyond the realm of possibility that a person living in a small community does not know, by virtue of his status as a member of that small community, that a local ranch operating under an assumed name that does not expressly indicate corporate status is owned by a corporation in Dallas. Finally, we do not conclude that it would be unreasonable for one person to be friends with another, but for neither person to know the legal status of the other person's employer. As for the remaining circumstances cited by Appellants, even assuming they were sufficient to put Hancock on notice that he had, in fact, contracted with Burch in his capacity as officer of a corporation, such facts do not relate to the time the contract was entered into, and thus, are not proper for our consideration. *See Lacquement,* 876 S.W.2d at 940; *see also Dodson v. Peck,* 75 S.W.2d at 463; *see, e.g., Anderson,* 398 S.W.2d at 637 (fact that a party received checks made by the principal did not relieve the agent from liability because disclosure needed to be made at the formation of the contract and noting that the mere receipt of checks or other documents bearing the principal's identity might not be sufficient to disclose the identity to the plaintiff).

Although Appellants briefly acknowledge the authority on agency as set forth above, Appellants ask that we disregard such authority and consider their contention that:

> Additional[ly], public policy concerns in this area exist. The law in Texas in the new millennium cannot allow people dealing with large businesses with assumed names, multiple employees, etc. to feign ignorance of corporate existence. If everyone who has a corporation must, from the top officer down, always remind those they are dealing with that "you are ordering your hamburger and french fries from the McDonalds Corporation or from Joe's Hamburgers[,] Inc." or "your dry cleaning will be done by XYZ[,] Inc. d.b.a. Main Cleaners," to guarantee that if something goes wrong with the transaction personal liability doesn't exist, business and commerce will be disrupted. Any principle of general agency to the contrary is far outdated and the law "must be consistent with the conditions and circumstances of our people."

We do not agree with the supposition that large businesses with assumed names, multiple employees and the like invariably adopt the corporate form. Texas has a variety of legal protections for entities, which vary from the traditional corporate model, and which, like the corporate model, are available for entities both large and small. Furthermore, agency law is alive and well in Texas and is an important part of our jurisprudence. Appellants' contention that disclosure of the corporate form has become impractical and antiquated in the modern age is not supported by relevant authority and is insufficient to discharge Appellants' burden.

Having reviewed the record, we conclude that there was legally sufficient evidence that Hancock lacked actual knowledge that Burch was contracting as a representative of Deja Vu. Further, given the fact that it is undisputed that only Burch and Hancock were present during the negotiations of the stump-grinding agreement, and given the fact that Burch offered no testimony indicating that he represented to Hancock that he was acting on behalf of Deja Vu, we conclude that the record does not uncover any great weight of evidence contradicting the finding made by the trial court in this case, nor does the verdict otherwise shock the conscience of this Court. Appellants' issues one, two and three are overruled.

■■■■■ In their fourth and fifth issues, Appellants contend that the trial court's findings related to the number of stumps ground by Hancock and the amount of money owed to Hancock on the account are not supported by legally and factually sufficient evidence. The elements necessary to prove a suit on sworn account are: (1) a sale and delivery of goods or services, (2) the charges on the account are just, *i.e.,* the prices are charged in accordance with an agreement or, in the absence of an agreement, are the usual, customary and reasonable prices for that good or service; and, (3) the amount remains unpaid. *See Andrews v. East Tex. Med. Ctr.-Athens,* 885 S.W.2d 264, 266 (Tex.App.-Tyler 1994, no writ). At trial, Hancock testified that he performed a service for Burch in accordance with the agreement between the two parties. Hancock testified that he ground a total of 1,165 stumps at a rate of five dollars per stump. Hancock further testified that the rate of five dollars per stump was the price agreed upon by the parties and was very reasonable. Finally, Hancock testified that he had not been paid on the last invoice that he submitted to Burch

in the amount of $2,405.00. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that there was some evidence amounting to more than a scintilla to support the trial court's finding that Hancock provided stump grinding services for Burch at an agreed rate of five dollars per stump and that Hancock had not been paid for a portion of the services he provided.

In its factual sufficiency challenge, Appellants point to the testimony of Burch, Luckett and Nix, who independently surveyed the land on which Hancock had been grinding stumps to determine how many stumps had been ground. Appellants contend that the testimony of Burch, Luckett and Nix so greatly outweighs the testimony offered by Hancock as to how many stumps were ground, that such testimony renders Hancock's testimony and any other evidence on which the trial court based its finding factually insufficient. Appellants further contend that one of the invoices submitted as an exhibit by Hancock was tampered with, which Appellants argue weighs heavily against Hancock's credibility as a witness.

■■■■■ In making its findings, the fact-finder weighs the evidence, assesses the credibility of witnesses, and resolves conflicts and inconsistencies. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). The fact-finder is the judge of the facts proved and of the reasonable inferences to be drawn therefrom. *See Lockley v. Page,* 142 Tex. 594, 180 S.W.2d 616, 618 (1944). We are mindful that this Court is not a fact-finder, and we cannot substitute our judgment for that of the trial court, even if a different finding could be reached on the evidence. *See Service Lloyds Ins. Co. v. Martin,* 855 S.W.2d 816, 819 (Tex.App.-Dallas, no writ). We reiterate that we will reverse only if we conclude that the verdict is so against the great

weight and preponderance of the evidence as to be manifestly unjust. *See In re King's Estate,* 244 S.W.2d at 661.

■ In the instant case, four witnesses testified as to how many stumps had been ground and the method used to determine such an amount. Hancock, who was the only of the witnesses present when the stumps were being ground, testified that he marked down each stump on his stump-grinding machine after he ground it. Burch testified that he visually surveyed the land on which Hancock had worked and counted the stumps he determined had been ground. Luckett and Nix, who were employed by Burch to count the number of stumps ground, surveyed the land both visually and with the use of a metal surveying probe. All testified that a much lower number of stumps were ground than claimed by Hancock on his invoice. However, both Luckett and Nix admitted that their method of counting stumps was not an exact science. The record further reflects that a visual survey, as utilized by Burch, would fail to discover stumps ground below the surface. Moreover, the record reflects that Luckett and Nix did not make their surveys until months after Hancock had stopped grinding stumps, during which time the land had flooded at least twice, been plowed and had been grazed by cattle. Further still, the inconsistencies in invoices introduced as exhibits is not conclusive evidence that Hancock was not a credible witness. At trial, Hancock testified that the invoice for $2,495.00 was simply a mistake, which he had attempted to correct by submitting a subsequent invoice to Burch in the amount of $2,405. The credibility of a witness, such as Hancock, is not a determination we may make. *See Martin,* 855 S.W.2d at 819.

In conclusion, our review of the record as a whole has not uncovered any great weight of evidence to allow us to conclude that the trial court's finding was manifestly unjust, nor does the trial court's finding otherwise shock the conscience of this Court. Therefore, we hold that the evidence was factually sufficient to support the trial court's findings. Appellants fourth and fifth issues are overruled.

Accordingly, the judgment of the trial court is *affirmed.*