Affirmed and Memorandum Opinion filed April 8, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-01180-CV



Paul Avenell, Appellant 

v.

Chrisman
Properties, L.L.C., Appellee 



On Appeal from
the 234th District Court

Harris County, Texas

Trial Court
Cause No. 2006-38301



 

MEMORANDUM OPINION 

In this breach of contract case, appellant Paul
Avenell asserts that the trial court erred (a) in finding him liable both
“Individually and d/b/a K & S Contracting” for unpaid rent pursuant to a
lease agreement and (b) in calculating the damages suffered by appellee,
Chrisman Properties, L.L.C. (“Chrisman”).  We affirm.

I.  Background

In late 2004, Paul Avenell, as trustee for the
Avenell 1996 Family Trust (the “Trust”), sold property located at 14041
Chrisman Road in Houston (the “property”) to Michael Ewer.  Through an addendum
to the purchase agreement, Avenell, on behalf of the Trust, agreed to lease
back the property from Ewer.[1] 
A sixty-six month lease agreement (the “lease”) was signed on October 1, 2004;
the landlord listed in the lease was “Michael Ewer and/or assigns”[2] and the
tenant was listed as “Mr. Paul Avenell – K&S Contracting.”  The lease
specified as the permitted use of the property:  “For the business use of the
K&S Contracting Company – HVAC Design and Installation.” In an article entitled “Assignment and
Subletting,” “Tinco, Tempature [sic] Systems, Inc., and K&S Contracting”
were identified as “existing subleases currently in the leased premises.”    

The lease additionally contained several sections regarding
defaults and remedies, including provisions that the tenant could be liable for
all rent due under the lease in the event of default and that the tenant must pay
the landlord “all reasonable costs and expenses” incurred by the landlord in re-leasing
property, including court costs and expenses.  The lease was executed by Ewer
as landlord and “K & S Contracting” as tenant, with Paul Avenell signing
for “K & S Contracting.”

Over the next several months, the rent under the
lease was paid to Chrisman.  However, in November 2005, lease payments for the
property stopped, and in April 2006, K&S Contracting abandoned the property. 
As is relevant here, in January 2007, Chrisman filed a claim against “Paul
Avenell, Individually and DBA K&S Contracting, Paul Avenell, as Trustee for
the 1996 Avenell Family Trust, [and] K&S Contracting, Inc.” for breach of
the lease.  Avenell responded by generally denying Chrisman’s allegations.

The case was tried to the bench on April 30, 2008.  At
the trial, Ewer testified that he had not thoroughly reviewed the lease prior
to signing it and that he intended for the Trust to be the tenant, per the
addendum to the property purchase agreement.  However, he also stated, “The
intention under the contract [the property purchase agreement] was that the
tenant should be the trust.  The tenant under the lease is Mr. Paul Avenell.” 
He further testified that he “should have paid more attention to the fact that
[the lease] said Paul Avenell and not the . . . Trust.”  He stated that he leased
the property to either Paul Avenell or K&S Contracting, but that he
believed neither of these entities was a corporation.  Ewer also explained the
method he used to calculate his damages and provided a spreadsheet to the trial
court.  According to Ewer, he offset the rent he should have received under the
lease by the amount he was due under a new lease he was able to negotiate with
another tenant.  He included a “lease commission” in the damages figure he
arrived at, for a total of $134,104.50 in damages for breach of the lease. 
Ewer also stated that he was no longer in possession of the property.

Avenell testified that he, like Ewer, had not
thoroughly reviewed the lease before signing it.  He explained that he signed
the lease on behalf of K&S Contracting as “operations manager” and never
intended for the Trust to be a tenant under the lease.  He also testified that
he was not an officer, a director, or an owner of K&S Contracting, Inc.  He
stated that the individual companies that had submitted rent checks under the
lease to Chrisman were predominantly owned by various members of his family. 
He also explained that K&S Contracting, Inc. was still in business, but
more than likely had more debts than assets and no longer had any employees.

After the hearing, the trial court entered judgment
in favor of Chrisman.  The trial court concluded that (a) the lease was
ambiguous as a matter of law, (b) Avenell “Individually and dba K&S
Contracting” was the tenant under the lease, and (c) Chrisman was entitled to
damages in the amount of $134.104.50, plus pre-judgment interest and attorney’s
fees.  Avenall filed a motion for new trial, challenging these legal
conclusions; the motion was overruled by operation of law.  This appeal timely
ensued.

II.  Issues Presented

In his first issue, Avenell asserts that the trial
court erred in finding the lease ambiguous and holding him individually and
d/b/a K&S Contracting liable for unpaid rent pursuant to the lease.  He
contends the trial court erred in calculating Chrisman’s damages in his second
issue.

III.  Analysis

A.        Construction
of the Lease

            Whether a
contract is ambiguous is a legal question we review de novo.  See Chrysler
Ins. Co. v. Greenspoint Dodge of Houston, Inc., 297 S.W.3d 248, 252 (Tex.
2009).  Our primary concern in construing a written contract is to ascertain
the true intentions of the parties as expressed in the instrument.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  A
contract is ambiguous when it is susceptible to more than one reasonable
interpretation.  Frost Nat’l Bank v. L&F Distribs., Ltd., 165 S.W.3d
310, 312 (Tex. 2005).  However, a contract is not ambiguous merely because the
parties disagree about its meaning.  Dynegy Midstream Servs., Ltd. P’ship v.
Apache Corp., 294 S.W.3d 164, 168 (Tex. 2009).  

            Here, the trial
court concluded that the lease was ambiguous as to whom the tenant was; the
court determined that the tenant was either “Paul Avenell, Individually and DBA
K&S Contracting” or “K&S Contracting, Inc.”  However, we see nothing in
the contract to indicate that Avenell entered into the lease agreement on
behalf of “K&S Contracting, Inc.”  Instead, each time his name is included
in the contract, it is associated with “K&S Contracting.”  For example, in
Article 1.1 of the lease, “Mr. Paul Avenell – K&S Contracting” is listed as
the tenant.  Further, on the signature page, the signature block for “Tenant”
was completed as follows:

TENANT:

K&S Contracting (handwritten)

By:  Paul Avenell (signature)

Name:  Paul Avenell (handwritten)

Title:  Op. Mgr. (handwritten)

Thus, we conclude that the
lease is unambiguous and that K&S Contracting is the tenant.

Avenell asserts that the contract contains a
reference to “K&S Contracting Company,” which is sufficient to notify
Chrisman that K&S Contracting is incorporated.  However, the only place in
the lease where “K&S Contracting Company” is mentioned is in the section
designating the “permitted use” of the premises.  All other references in the
lease to “K&S Contracting” do not contain the word “company” or any other
indication that K&S Contracting is structured in such a manner as to
protect Avenell from personal liability.  Courts do not presume agency.  Bernsen
v. Live Oaks Ins. Agency, Inc., 52 S.W.3d 306, 309 (Tex. App.—Corpus
Christi 2001, no pet.); Virani v. Cunningham, No. 14-08-01166-CV, 2009
WL 2568349, at *2 (Tex. App.—Houston [14th Dist.] Aug. 20, 2009, pet. denied)
(mem. op.).  An agent is personally liable on a contract he signs if he fails
to disclose the fact and intent of his agency.  Virani, 2009 WL 2568349,
at *2 (citing Ward v. Prop. Tax Valuation, Inc., 847 S.W.2d 298, 300
(Tex. App.—Dallas 1992, writ denied)).  It is the burden of the agent to prove
that he properly disclosed his principal.  Id.  (citing DiGiammatteo
v. Olney, 794 S.W.2d 103, 104 (Tex. App.—Dallas 1990, no writ)).  Avenell
did not disclose that the principal was K & S Contracting, Inc., and the
court did not find in favor of Avenell on this point.  See Sw. Bell Media,
Inc. v. Trepper, 784 S.W. 2d 68, 72 (Tex. App. —Dallas 1990, no writ).

It appears from the face of the contract that
“K&S Contracting” may be a trade name.  But “the use of a tradename is
generally an insufficient disclosure of the principal’s identity and the fact
of agency so as to protect the agent against personal liability.”  Burch v.
Hancock, 56 S.W.3d 257, 261–62 (Tex. App.—Tyler 2001, no pet.); see also
Lachman v. Houston Chronicle Publ’g Co., 375 S.W.2d 783, 785 (Tex. Civ. App.—Austin
1964, writ ref’d n.r.e.) (stating that use of a trade name in a contract is not
sufficient disclosure of the identity of a principal and the fact of agency). 

Crisman sued Avenell as “Paul Avenell, Individually
and DBA K&S Contracting.”  Avenell did not respond to Chrisman’s allegation
that Avenell was operating under the trade name “K&S Contracting” by filing
a verified pleading.  See Tex. R.
Civ. P. 93(14) (requiring a verified pleading to establish “[t]hat a
party plaintiff or defendant is not doing business under an assumed name or
trade name as alleged).  Failure to file verified pleadings as required by Rule
93 waives a party’s right to complain about the issue.  Cf. Pledger v.
Schoellkopf, 762 S.W.2d 145, 146 (Tex. 1988) (per curiam) (concluding that
failure to file a verified pleading denying liability in capacity sued results
in waiver of right to complain); see also Thomas v. Sun Indus., Inc.,
No. 05-92-02559-CV, 1994 WL 21898, at *2 (Tex. App.—Dallas Jan. 27, 1994, writ
denied) (not designated for publication) (concluding that defense that
appellant was not doing business under assumed name was waived because
defendant failed to file verified denial).  Because Avenell failed to file a
sworn affidavit that he was not operating under the trade name “K&S
Contracting,” the trial court did not err in concluding that he was
individually liable on the contract.  We therefore overrule his first issue.

B.        Damages

Avenell next asserts that the trial court erred in
calculating damages under the lease because Chrisman sold the property in May
2007 and the damages awarded to Chrisman included unpaid rent through the
entire term of the lease.[3] 
Ordinarily, damages in a breach-of-contract case are measured by the “benefit
of the bargain,” the purpose of which is to restore the injured party to the
economic position it would have been in had the contract been performed.  Mays
v. Pierce, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet.
denied).  Generally, the parties to a contract can agree on the remedy to be
applied if the agreement is breached; such an agreement should be enforced
unless it is illegal or against public policy.  Gilbane Bldg. Co. v. Two
Turners Elec. Co., No. 14-05-00908-CV, 2007 WL 582252, at *7 ((Tex.
App.—Houston [14th Dist.] Feb. 27, 2007, pet. denied) (mem. op.) (citing Shasteen
v. Mid-Continent Refrigerator Co., 517 S.W.2d 437, 440 (Tex. Civ.
App.—Dallas 1975, writ ref’d n.r.e.)).

In this case, the lease defined failure to pay rent
and abandonment of the leased property as “events of default.”  Avenell does
not dispute that K&S Contracting defaulted on the lease.  Further, as noted
above, the lease provided remedies for default, including all unpaid rent under
the lease and “all amounts required to be paid by Tenant to Landlord until the
date of expiration of the Lease Term . . . , diminished by all amounts received
by Landlord through reletting of the Leased Premises during such remaining term
. . . .”  The lease further provided that, in the event of a default, the “Tenant
shall also pay to Landlord all reasonable costs and expenses incurred by Landlord,
including . . . reletting all or any part of the Leased
Premises.”  

Ewer provided an exhibit to the trial court
calculating damages under the lease, including the rent due from the date of K&S
Contracting’s default through the end of the lease.  Ewer also included in this
exhibit the amount of the broker’s fee he paid to re-lease the property. 
Finally, Ewers included an offset for the rent he expected to receive from the
substitute tenant through the entire term of the original lease.  Avenell has
not claimed that the agreed-upon remedies contained in the lease are illegal or
against public policy, and the damages awarded conform to the terms of the
contract.  See id.  

In fact, not upholding such a lease provision could
lead to unintended results.  If tenants knew that they could breach their lease
before a sale of a building and suffer no consequences for a breach of lease, the
value of a leased building would be seriously undermined.  Any tenant with
unfavorable lease terms could breach and then re-negotiate with the new buyer.  Under
these circumstances, we overrule Avenell’s second issue.

IV.  Conclusion

            In sum, although
we disagree with the trial court’s legal conclusion that the lease is
ambiguous, we agree that Avenell, individually, is liable under the lease.  We
further conclude that the trial court did not err in calculating damages under
the lease.  We therefore overrule Avenell’s two issues and affirm the trial
court’s judgment.

 

 

 

                                                                                    

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

Panel consists of Chief Justice Hedges
and Justices Anderson and Christopher.









[1]
In addition to a cash payment by Ewer for the property, Chrisman executed a
promissory note in favor of the Trust.  When the lease tenant(s) stopped paying
rent, Chrisman apparently ceased payments on the promissory note, and Avenell,
as trustee for the Trust, filed suit against Chrisman on the note.  Chrisman
countersued for damages under the lease agreement.  The suit on the note was
settled, and the trial court re-aligned the parties with Chrisman as plaintiff
and Avenell et al. as defendants before the bench trial.





[2]
Ewer subsequently assigned the lease to Chrisman.





[3]
Avenell contends, “Once a landlord conveys the property to a third-party, he is
no longer entitled to collect rent on the property.”  The cases he cites to
support this contention, however, are inapposite.  First, in Ellison v.
Charbonneau, a 1936 case from the Fort Worth court of appeals, the court
concluded that when a landlord evicts a tenant, he is not entitled to the rent
due under the lease.  See 101 S.W.2d 310, 314–15 (Tex. Civ. App.—Fort
Worth 1936, writ dism’d).  But Chrisman did not evict Avenell; instead, Avenell
defaulted on the lease.  Second, in Evans v. First Guaranty State Bank of
Southmayd, a 1917 case from the Amarillo court of appeals, the court held
that a landlord who conveys land by general warranty deed without reserving
rents loses any interest he may have had in the rents. See 195 S.W.
1171, 1172 (Tex. App.—Amarillo 1917, no writ).  Neither case addresses a
contractual remedy under a lease.