

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-24-00249-CV

**GIBBONS & BRAVOS SURVEYING L.L.C**. and Jean Michael **BRAVO**,
Appellants

v.

Gary A. **GIBBONS**, Patricia A. Gibbons, Gibbons Surveying And Mapping, INC., Kevin W.
Love, Sheila F. Love, Klove Engineering, L.L.C. and Gibbons Surveying L.L.C.,
Appellees

From the 73rd District Court, Bexar County, Texas
Trial Court No. 2020CI20997
Honorable David Canales, Judge Presiding

Opinion by: Lori Massey Brissette, Justice

Sitting: Irene Rios, Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: August 13, 2025

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

This case involves the issues of (1) whether a party can recover on quantum meruit and

suit on sworn account theories when the jury charge includes a question on breach of contract,

(2) the sufficiency of evidence necessary to recover conditional appellate attorney's fees, and

(3) the standard to apply when determining whether attorney's fees can and should be segregated.

We affirm in part and reverse and remand in part.

**FACTS**

Jean Michael Bravo purchased a surveying company (Gibbons Surveying & Mapping, Inc., or "GS&M") from Gary & Patricia Gibbons, signing four agreements: a promissory note, an asset purchase agreement, a commercial lease, and a security agreement. Bravo also leased the building in which the business was housed from the Gibbons and employed Gary Gibbons as a surveyor. The relationship, however, deteriorated thereafter. Eventually, the Gibbons locked Bravo out of the building, and Gary Gibbons went to work for a competitor (KLove Engineering, LLC or "KLove"), despite a noncompete agreement.

Bravo and his new company (Gibbons & Bravos Surveying, LLC)[1] sued the Gibbons, GS&M[2] and KLove for (1) breach of contract, (2) tortious interference with existing contracts, and (3) civil conspiracy. Bravo also sued the Gibbons for fraudulent inducement. Finally, Bravo sued KLove for suit on sworn account and quantum meruit, in addition to its breach of contract claim, for failure to pay for surveying services. The Gibbons parties countersued against Bravo for breach of contract and fraud.

The case was tried to a jury but a directed verdict was awarded in favor of the Gibbons parties on Bravo's tortious interference and civil conspiracy claims. The Gibbons parties also abandoned their own fraud claims. This left for trial the dueling claims for breach of contract, Bravo's claim for fraudulent inducement against the Gibbons parties, and Bravo's claims against KLove for breach of contract, suit on sworn account, and quantum meruit. The jury then returned a verdict that found:

---

[1] We will refer to Jean Michael Bravo and Gibbons & Bravos Surveying, Inc. as "Bravo."

[2] We will refer to Gary and Patricia Gibbons and Gibbons Surveying & Mapping, Inc. as "the Gibbons parties."

- Bravo breached the four contracts with the Gibbons parties but owed damages for only two of those breaches;

- The Gibbons parties did not fraudulently induce Bravo into the asset purchase agreement;

- The Gibbons parties did breach the asset purchase agreement but, because Bravo committed the first material breach, their performance was excused;

- KLove did not fail to comply with an agreement for surveying services by Bravo; and

- KLove did fail to pay and should pay to Bravo the amount of invoices for surveying services performed, under both suit on sworn account and quantum meruit claims.

The trial court, on KLove's motion, disregarded the jury's findings against KLove as to sworn account and quantum meruit, rejected Bravo's request for attorney's fees, and entered a take nothing judgment on all claims asserted by Bravo. The trial court otherwise entered judgment in accordance with the verdict—in favor of the Gibbons parties—and awarded attorney's fees to the Gibbons parties in light of their recovery on breach of contract.

### MOTION TO DISREGARD JURY ANSWERS RELATING TO QUANTUM MERUIT AND SUIT ON SWORN ACCOUNT

First, Bravo asserts the trial court erred in granting KLove's post-trial "Motion to Disregard Jury Answers" to questions on quantum meruit and suit on sworn account and failing to render judgment on the damages awarded by the jury under those theories.[3] The jury was asked first whether KLove failed to comply with the agreement to pay for surveying services. In the same question, the jury was instructed that KLove's failure to comply is excused if Bravo waived compliance.[4] The jury answered "No" to that breach of contract question. The jury was then asked whether invoices remained unpaid to Bravo (suit on sworn account) and whether Bravo "performed compensable work for [KLove] for which [Bravo] was not compensated" (quantum

---

[3] All references to the motion in question refer to "Defendant KLove Engineering LLC's Second Amended Motion to Disregard Jury Answers."

[4] Such waiver would be based, according to KLove, on Bravo's breach of the promissory note that triggered a provision within the security agreement allowing the Gibbons parties to assume the right to recover on outstanding invoices.

meruit). The jury answered in the affirmative on both theories of recovery and awarded to Bravo $11,807.50 for suit on sworn account and $21,007.50 for quantum meruit.

In the motion to disregard jury findings, KLove argued that: (1) the jury's answer of "No" to the breach of contract question rendered the jury's answer of "Yes" to suit on sworn account immaterial; (2) the evidence presented at trial established an agreement existed between KLove and Bravo relating to the services, barring recovery under an equitable theory; and (3) Bravo is barred from recovering on invoices that were paid directly to the Gibbons parties pursuant to their right to take control of outstanding accounts receivables.

A jury's answer may be disregarded when it has no support in the evidence, when the evidence conclusively establishes the opposite fact, or when recovery is barred by a legal principle such that a directed verdict would have been proper. *See Tiller v. McLure*, 121 S.W.3d 709, 713–15 (Tex. 2003) (jury finding disregarded for lack of evidence); *see also TRT Dev. Co.-KC v. Meyers*, 15 S.W.3d 281, 285–87 (Tex. App.—Corpus Christi 2000, no pet.) (jury finding disregarded because qualified privilege barred recovery); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173–74 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (jury finding disregarded because defendant had right to unilaterally liquidate business). It is also appropriate to disregard a jury finding when the finding is rendered immaterial by another jury finding. *Southeastern Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999); *see, e.g.*, *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 505–06 (Tex. 2018). "A question is immaterial when it should not have been submitted, it calls for a finding beyond the province of the jury, such as a question of law, or when

it was properly submitted but has been rendered immaterial by other findings." *Tichacek*, 997 S.W.2d at 172; *see also Menchaca*, 545 S.W.3d at 506.[5]

KLove first contends that the jury's answer of "No" to breach of contract necessarily renders immaterial the jury's later answers relating to outstanding invoices. KLove reasons that the jury must have followed the instructions within the question and found that Bravo waived the ability to recover on the outstanding invoices. But, in our recent decision in *Champion Food Service, Inc. v. ProAlamo Foods, L.L.C.*, we refused to imply a finding by a jury when they failed to answer a jury question affirmatively. No. 04-22-00232-cv, 2024 WL 5059321 (Tex. App.—San Antonio 2024, pet. filed) (mem. op.). A jury's answer of "No" to a question does not automatically imply anything other than the fact that the party carrying the burden of proof on the question failed to prevail. *See Rhey v. Redic*, 408 S.W.3d 440, 453–54 (Tex. App.—El Paso 2013, no pet.) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)).

Thus, to determine whether the jury's answers to suit on sworn account and quantum meruit were immaterial and could be disregarded, we must conduct a review of the evidence to determine whether there is any evidence to support the jury's findings or whether there is conclusive proof that Bravo is barred from recovering on those theories. *See, e.g.*, *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). For example, "[a] party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). And, to recover on suit on sworn

---

[5] Bravo contends on appeal KLove waived the ability to challenge the jury's questions because it failed to object to a conflict in jury answers before the jury was discharged. *See Menchaca*, 545 S.W.3d at 504–05; *see also* Tex. R. Civ. P. 295 (providing where questions in conflict, court could provide jury such additional instructions as may be proper, and retire jury for further deliberations). But KLove did not argue in its post-verdict motion that there was a fatal conflict in jury answers. Instead, KLove argued a legal issue precluded the court from rendering judgment on the jury's verdict.

account, there must be proof that the amount remains unpaid. *Burch v. Hancock*, 56 S.W.3d 257, 264 (Tex. App.—Tyler 2001, no pet.).

As set forth in *City of Keller*, we should sustain a legal sufficiency challenge if the record shows: (1) a complete absence of evidence of vital fact, (2) rules of law or evidence barred the court from giving weight to only evidence offered to prove vital fact, (3) evidence offered to prove vital fact was no more than scintilla, or (4) the evidence at trial establishes conclusively the opposite of vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In so reviewing, we view the evidence in the light most favorable to the verdict, crediting evidence supporting the verdict if reasonable jurors could, and disregarding evidence contrary to the verdict unless reasonable jurors could not. *Id.* at 827–28. This "traditional scope of review does not disregard contrary evidence if there is no favorable evidence[,] . . . or if contrary evidence renders supporting evidence incompetent[,] . . . or conclusively establishes the opposite." *Id.* at 810–11.

However, we are unable to do such a full review in this case since we only have excerpts from the trial testimony and no exhibits before us.[6] Bravo bears the burden to present this court with a record of the evidence presented to the trial court. *See, e.g.*, *Enterprise Leasing Co. v. Barrios*, 156 S.W.3d 547, 549–50 (Tex. 2004) (per curiam). Where the appellate record does not include relevant evidence, "an appellate court must presume that the omitted evidence supports

---

[6] After we initially set this case for oral argument, Bravo informed the court, by letter, that despite its best efforts, the court reporters did not file a supplemental reporter's record of the charge conference and subsequent proceedings. Thereafter, we removed the case from submission to secure the additional record. After the supplemental record was filed, and after the parties filed amended briefing, the case was re-submitted before us. We note that Bravo's requests for additional record submissions did not reference the need for the remainder of the trial proceedings that occurred prior to the charge conference or the trial exhibits. Thus, we are left with only excerpts from the trial and no trial exhibits. Although we endeavor to determine cases on the merits, at some point an appellant must bear the burden to ensure the record before us allows us to address the points of error they bring forth. *Accord* TEX. R. APP. P. 34.6(c) (recognizing if appellant requests partial reporter's record, appellant must include in request statement of points or issues to be presented on appeal and will then be limited to those points or issues and appellate court must presume partial reporter's record constitutes entire record for purposes of reviewing asserted points of error, even sufficiency arguments).

the trial court's judgment." *Id.*; *see Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 151 (Tex. 2015) (same).

But even beyond that presumption, which relates only to the portion of the transcript not before us, the record we *can* consider demonstrates the parties all agreed there was an agreement between Bravo and KLove relating to payment for the surveying services provided. *See Kellogg*, 166 S.W.3d at 740 (barring recovery on quantum meruit where an enforceable agreement exists). In fact, the case was tried based on Bravo's live pleading which alleged, under the quantum meruit theory of liability, that Bravo "provided defendants with valuable services *in accordance with the Contracts entered into with*" KLove.[7] At trial, Love testified that, while there was no written contract, there was an agreement that surveying services would be provided to KLove for various clients of KLove and that KLove would pay for those services when the client paid KLove. Gary Gibbons also testified that in exchange for getting a large volume of work for KLove, he provided payment flexibility, agreeing that payment would be made when KLove got paid by their client. He further testified he communicated to Love that nothing would change after the sale of the company to Bravo and, in exchange, Love continued sending work their way.[8] Finally, instead of disputing that there was such an agreement, Jean Michael Bravo took the position that he would not have purchased the property had he known that the agreement in fact existed, presumably in support of his claim of fraudulent inducement.

---

[7] Although pleadings are generally not evidence, a party that makes assertions of fact, not pled in the alternative, are bound by those judicial admissions. *Brooks v. Ctr. for Healthcare Svcs.*, 981 S.W.279, 283 (Tex. App.—San Antonio 1998, no writ); *see also Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) (addressing impact of judicial admissions within pleadings at post-judgment stage).

[8] While Gibbons disagreed with Love's testimony that no payment would be owed if the client never paid, he did agree that the arrangement allowed flexibility on the timing of payment, even referencing the fact that sometimes payment was delayed because the closing of the project was delayed.

We find nothing in the record that would support the proposition that a valid agreement did not exist for payment of the surveying services. Counsel for Bravo, when questioning Love, even characterized the dispute "as to who to pay—not that it was owed." And, *that's* the real crux of the issue barring Bravo's recovery under either quantum meruit or suit on sworn account: the fact that the invoices were, in fact, paid. They were just paid to Gibbons instead of Bravo due to Bravo's breach of the security agreement.

The security agreement states that upon default under the promissory note, the Gibbons parties "may notify or require each account debtor to make payment directly" to them and that they "may take control of the proceeds paid."[9] Bravo admitted he quit paying on the promissory note in October of 2020 and the jury found he breached that agreement, a finding he fails to challenge on appeal. Further, the record shows that Patty Gibbons instructed KLove via email to pay all outstanding invoices directly to the Gibbons parties rather than Bravo, pursuant to their rights under the security agreement. And, the record shows KLove wrote a check for just over $5,000 which was deposited into, and remains in, a separate banking account under the control of the Gibbons parties, as partial satisfaction of the outstanding invoices. Finally, both Gary Gibbons and Love testified that the remainder was a credit due to KLove because of the prior payment for services made directly by a client of KLove—payment which would have normally been made to KLove first and then from KLove in satisfaction of the invoice. Even Bravo recognized that KLove

---

[9] Although Bravo seeks to differentiate a breach of the promissory note with a default of the security agreement, paragraph 7 of the security agreement clearly states that "[u]pon the occurrence of either a default under the Note or a breach of this Agreement or any other agreement securing or guaranteeing the Note by any party other than the Secured Party (a "Default"), Secured Party has the following cumulative rights and remedies under this Agreement." The security agreement goes on to state the language, set out above and in paragraph 7(d), allowing the Gibbons parties to assume the right to outstanding accounts receivable in the event of such default. Further, paragraph 7(f) of the security agreement states that account debtors (such as KLove) "may rely upon written certification from Secured Party [i.e. the Gibbons parties] that such a Default exists" when making payment on outstanding accounts receivables directly to the Gibbons parties.

paid the invoices directly to Gibbons instead of to Bravo. *See Burch*, 56 S.W.3d at 264 (element of claim for suit on sworn account is that amount remains unpaid).

Taking this evidence along with the presumption that any omitted evidence supports the trial court's judgment, there is legally insufficient evidence to support the jury's findings because the record conclusively establishes both the existence of an agreement and that the outstanding invoices were paid to the Gibbons parties pursuant to their right to recover outstanding accounts receivables. *See City of Keller*, 168 S.W.3d at 810 (recognizing lack of legal sufficiency to support jury's finding where opposite of vital fact is conclusively proven); *Enterprise Leasing Co.*, 156 S.W.3d at 549–50 (assuming omitted evidence supports trial court's judgment).[10] Accordingly, we must affirm the trial court's decision to disregard the jury's findings as to quantum meruit and suit on sworn account.[11]

### SUFFICIENCY OF THE EVIDENCE RELATING TO THE GIBBONS PARTIES' ATTORNEY'S FEES

Bravo also challenges the trial court's award of attorney's fees to the Gibbons parties. The Gibbons parties prevailed on the many claims asserted against them by Bravo. In addition, the jury found that Bravo failed to comply with four of the agreements but awarded damages as to only two of those breaches—the commercial lease and promissory note. The trial court entered a judgment awarding the Gibbons parties $72,913, for the breach of the commercial lease, and

---

[10] KLove also urges that Bravo cannot recover on suit on sworn account because the transaction was for services instead of goods, which we find unpersuasive. *See Andrews v. East Texas Medical Center-Athens*, 885 S.W.2d 264, 266 (Tex. App.—Tyler 1994, no writ) (defining suit on sworn account for goods or services) (citing *Jones v. Ben Maines Air Conditioning, Inc.*, 621 S.W.2d 437, 438–39 (Tex. App.—Texarkana 1982, no writ)); *Day Cruises Maritime, L.L.C. v. Christus Spohn Health System*, 267 S.W.3d 42, 54 (Tex. App.—Corpus Christi-Edinburg 2008, pet. denied) ("Debts incurred as a result of the provision of medical services may be enforced by a suit on a sworn account" (citations omitted)); *see also* TEX. R. CIV. P. 185 (defining suit on account to include "for personal service rendered").

[11] Bravo agreed at oral argument that their asserted point of error addressing the trial court's failure to award Bravo attorney's fees turns on whether we reverse and render judgment on the damages awarded by the jury on suit on sworn account and/or quantum meruit. Because we instead affirm the trial court's judgment in that regard, we do not address the issue of Bravo's attorney's fees. *See* TEX. R. APP. P. 47.1.

$107,148.69, for the breach of the secured promissory note. In addition, the trial court awarded the Gibbons parties $177,113.75 in attorney's fees after the issue was submitted to the court for determination post-trial. The trial court concluded the Gibbons parties did not need to segregate their attorney's fees by claim "since all claims and defenses are intertwined to the point of being inseparable." Further, the trial court made specific findings relating to the reasonableness of the fees, including the reasonable rate for each attorney and the amount of time spent by each attorney.

On appeal, Bravo first asserts the evidence supporting the recovery of appellate attorney's fees is conclusory and, therefore, insufficient to support the trial court's award. Bravo also urges that the Gibbons parties were required, but failed, to segregate their attorney's fees between claims on which fees are recoverable and those on which they are not.

**Conditional Appellate Attorney's Fees**

"When reviewing a trial court's award of attorney's fees, we must ensure the record contains sufficient evidence to support an award." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 505 (Tex. 2019). The party seeking the fees bears the burden of proof at trial to support the reasonableness of the amount awarded. *Yowell v. Granite Operating Company*, 620 S.W.3d 335, 354 (Tex. 2020) (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762–63 (Tex. 2012)). Where the evidence is insufficient to support the trial court's award, we must reverse. *Id.*

To support the request for conditional appellate fees, Mr. Zlotucha testified via affidavit as follows:

> I am familiar with reasonable and necessary attorney's fees for preparing, presenting, and addressing post verdict motions and any appeal in this type of case. I have handled appellate cases in various Courts of Appeal in Texas including the Fourth Court of Appeals throughout my forty[-]five (45) year practice. My opinion is that reasonable and necessary attorney's fees for an appeal to the Court of Appeals in this case will be Fifty Thousand Dollars ($50,000), and Thirty Five Thousand Dollars ($35,000) in the event a Petition for Review is filed with the Supreme Court of Texas and the Court asks that the matter be briefed, and an

additional Fifteen Thousand Dollars ($15,000) in the event the Petition for Review is granted and an additional Twelve Thousand Five Hundred Dollars ($12,500) in the event oral argument is scheduled. The above appellate fees are contingent on being successful on appeal.

In *Yowell,* the Texas Supreme Court differentiated between the specificity of evidence required to prove (1) that services already performed were necessary and that the fees charged were reasonable and (2) the type of evidence necessary to prove the need for appellate fees "which have not yet been incurred and thus must be projected based on expert opinion testimony." 620 S.W.3d at 355 (citing *Ventling v. Johnson*, 466 S.W.3d 143, 156 (Tex. 2015)). Given that the nature of the fees required are still hypothetical, "[t]here is no certainty regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." *Id.* The Supreme Court then placed upon the party seeking fees "the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.*

The *Yowell* Court held the evidence was sufficient to satisfy an award of conditional appellate attorney's fees based on an affidavit much like the one before us. *See* 620 S.W.3d at 356. There, the affidavit detailed his hourly rate and the total amount of reasonable fees necessary at each stage of an appellate proceeding.[12] *See id.* at 354–55. Moreover, sister courts have held there is no need to go into specific services required at each stage because "all appeals involve researching, preparing, and drafting a brief, so remanding this case for a more specific description of particular services would provide little if any benefit." *Trujillo v. Shafaii Invs., Ltd.*, No. 01-22-00819-CV, 2024 WL 2001612, at *12 (Tex. App.—Houston [1st Dist.] May 7, 2024, pet. denied)

---

[12] The affidavit found to be sufficient in *Yowell* was detailed in a prior opinion within the same case. *See Yowell v. Granite Operating Company*, 557 S.W.3d 794, 808 (Tex. App.—Amarillo 2018), *rev'd*, 620 S.W.3d 335 (Tex. 2020).

(mem. op.); *see also Johnson v. Bearfoot Cos., LLC*, No. 02-23-00366-CV, 2024 WL 2202033, at *10 (Tex. App.—Fort Worth May 16, 2024, no pet.) (mem. op.) (holding affidavit setting forth hourly rate and opinion regarding total anticipated costs at each stage of appeal sufficient); *Lakeway Psychiatry & Behav. Health, PLLC v. Brite*, 656 S.W.3d 621, 640 (Tex. App.—El Paso 2022, no pet.) (holding testimony setting forth hourly rate and amounts requested for each stage of appeal sufficient); *Eichorn v. Eichorn*, No. 03-20-00382-CV, 2022 WL 1591709, at *14–15 (Tex. App.—Austin May 20, 2022, no pet.) (mem. op.) (same).

Because Mr. Zlotucha presented competent expert opinion testimony of his hourly rate and the total cost he believes will be required at each stage of an appeal, we hold the evidence presented to the trial court was sufficient to support the award of conditional appellate attorney's fees.[13]

**Segregation of Attorney's Fees**

As stated above, the Gibbons parties successfully defended against the many claims asserted by Bravo. They also litigated their own claims for fraud against Bravo as well as breach

---

[13] In addition to challenging the award of conditional appellate fees, Bravo asserts that the evidence of attorney's fees for work performed is insufficient because the fees were not billed contemporaneously with the services provided and because trial court was precluded from determining the reasonableness of the services rendered and the fees incurred by the presence of block-billing, vague descriptions, and unreasonable redactions. Although the attorney's fees affidavit of Frederick Zlotucha is in the record before us, the exhibits he references in the affidavit—specifically the invoices setting forth the fees incurred—were evidently submitted in camera to the court and not made a part of the record. As such, we are unable to independently determine whether they were sufficiently descriptive of the services rendered. We note, as set forth above, that the Gibbons parties had the burden of proof in the trial court to present evidence to support the trial court's award. *See Yowell*, 620 S.W.3d at 354. But, the appealing party, Bravo, bears the burden of setting forth an appropriate record for our review of its points of error on appeal. *See Enterprise Leasing*, 156 S.W.3d 549–50; *see also* TEX. R. APP. P. 34.6(d). The trial court, in its Findings of Fact and Conclusions of Law relating to the award of attorney's fees, found that the billing statements "adequately identified" the services performed and that the Gibbons parties provided competent expert opinion that such services were reasonable and necessary. Because the evidence does not include those invoices, we must assume the evidence supports the trial court's findings and its judgment and affirm the trial court's judgment on this point of error. *Id.*

of contract claims based on four separate agreements. In the end, they recovered on only two breach of contract claims, with the jury finding no damages on the other two claims.[14]

When addressing the question of segregation, we apply a hybrid standard of review because it is a mixed question of law and fact. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). "The need to segregate attorney's fees is a question of law, and the extent to which certain claims can or cannot be segregated is a mixed question of law and fact." *Williams v. Thomas*, No. 14-23-00420-CV, 2025 WL 1338099, at *3 (Tex. App.—Houston [14th Dist.] 2025, no pet.) (mem. op.) (citing *Chapa*, 212 S.W.3d at 312–13). "The party seeking to recover attorney's fees bears the burden to demonstrate that segregation is not required." *Id.* (citing *Clearview Props., L.P. v. Prop. Tex. SC One Corp.*, 287 S.W.3d 132, 144 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)).

Here, the only evidence supporting attorney's fees is the affidavit of Frederick Zlotucha. Mr. Zlotucha testified in his affidavit that the legal services required to prosecute the Gibbons

---

[14] Bravo contends the Gibbons parties are only entitled to an award of attorney's fees as to the two breach of contract claims for which the jury awarded damages. However, whether the Gibbons parties can recover attorney's fees as the prevailing party on breach of contract claims pleaded against them, as well as whether they can recover such fees on claims outside of a contract claim that relate to the same transaction, depends on the contractual provisions entered into between the parties. *See Fitzgerald v. Schroeder Ventures II, LLC*, 345 S.W.3d 624, 630–31 (Tex. App.—San Antonio 2011, no pet.); *see also Rohrmoos*, 578 S.W.3d at 485–86. (holding that contract that refers to "the prevailing party" allows for award of fees to party, whether plaintiff or defendant, that obtains actual and meaningful relief that materially alters parties' legal relationship). Here, though, the record before us does not include all of the contracts at issue. And the trial court's conclusion of law simply states that "[a]ttorney's fees were authorized by the express terms of the agreements executed by the parties and pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 et. seq." Because the trial court did not set out the specific claims on which the Gibbons parties were considered "prevailing parties" under those agreements, we cannot determine the scope of the claims on which the trial court held the Gibbons parties were entitled to recover fees or whether that determination was appropriate given the contractual agreements between the parties. We can, however, assume the trial court determined that the Gibbons parties were entitled to recover fees on some but not all claims involved in the litigation since it also concluded that segregation of fees was not required because the various claims were so intertwined that they could not be segregated. Such a finding would have been irrelevant and unnecessary if the trial court had found fees were recoverable on all claims. Because, as discussed *infra*, we remand this cause for reconsideration of the attorney's fees issue due to the need to reconsider the segregation issue, we leave it to the trial court on remand to determine the scope of recovery, both as to the claims on which the Gibbons parties are entitled to recover attorney's fees as well as the amount of attorney's fees incurred in furtherance of those claims. *See* TEX. R. APP. P. 43.2(d).

parties' contract claims relating to the commercial lease and promissory note would have been required regardless of the need to defend against Bravo's claims. He further states that a complete understanding of the terms and provisions of the asset purchase agreement was required, as the foundation for recovery on the other agreements. He then concludes by saying: "Thus, no segregation of fees is required or warranted under the facts and circumstances of this case." In so concluding, he asserts, "When claims are dependent upon the same set of facts and circumstances and thus are intertwined to the point of being inseparable, the party suing for attorney's fees may recover the entire amount covering all claims." The trial court, in its Findings of Fact and Conclusions of Law, adopted that standard, concluding: "The Gibbons parties were not required to segregate its attorney's fees hours since the fees rendered are in connection with claims arising out of the same transactions and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts."

There are a few things wrong here. First, while Zlotucha states that a complete understanding of the asset purchase agreement is necessary to prosecute the breach of contract claims relating to the commercial lease and promissory note, he does not take the position or provide evidence that the *legal services rendered in furtherance of* the claim involving the asset purchase agreement were also required to support the claims involving the commercial lease and promissory note, on which they prevailed. *See Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (providing, under *Chapa* standard, whether claims inextricably intertwined is not test: test is whether discrete legal services advance both claim or defense for which fees are recoverable and claim or defense for which fees are unrecoverable that fees need not be segregated). Zlotucha also does not testify that the legal services rendered in furtherance of the two breach of contract claims on which they prevailed

would have been required even absent the Gibbons parties' claim of fraud and/or their claim on the security agreement. These omissions would normally go to the sufficiency of the evidence supporting a finding that the claims are so intertwined that they preclude segregation of attorney's fees.

But, even more importantly, Zlotucha depended solely on the fact that the claims all arise out of the same set of facts and circumstances and are, therefore, inextricably intertwined, without making any effort to show why discrete legal services rendered are not segregable. This demonstrates that Zlotucha advanced and the trial court chose to utilize an inappropriate standard to determine the need to segregate, which under our hybrid approach, is a question of law that requires a de novo review. *See Chapa*, 212 S.W.3d at 312; *Kurtz v Kurtz*, 158 S.W.3d 12, 22 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 585 (Tex. App.—Austin 2003, no pet.)).

Specifically, the standard utilized by Zlotucha in his affidavit and adopted by the trial court is based on cases that are pre-*Chapa*. Prior to *Chapa*, the Texas Supreme Court stated:

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "inter[t]wined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims.

*Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d at 1, 11 (Tex. 1991) (quoting *Gill Sav. Ass'n. v. Chair King, Inc.*, 783 S.W.2d 674, 680 (Tex. App.—Houston [14th Dist.] 1989) and *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ. denied)) (citation omitted).

In *Chapa*, though, the Texas Supreme Court reaffirmed the general rule that a party is required to segregate attorney's fees when possible to do so and disavowed the suggestion that a common set of underlying facts, by itself, renders claims incapable of segregation. *Chapa*, 212 S.W.3d at 313–14 (addressing concern that *Sterling* exception easily swallowed rule); *see, e.g.*, *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (per curiam). "Intertwined facts do not make tort [attorney's] fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313–14 (recognizing that while "[i]t is certainly true that Chapa's fraud, contract, and DTPA claims were all 'dependent upon the same set of facts or circumstances,' . . . that does not mean they all required the same research, discovery, proof, or legal expertise" (footnote omitted)); *see, e.g.*, *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (stating same). Thus, a party has a duty to segregate unless it establishes that specific legal services were applicable to both recoverable and nonrecoverable claims. *Chapa*, 212 S.W.3d at 314; *Kinsel*, 526 S.W.3d at 427.

We have held that "[u]nder *Chapa*, the determining factor as to whether fees must be segregated is the type of legal services rendered with respect to the particular claims, not simply the manner of pleading or the type of claim pled." *Thomas v. Goodman*, No. 04-07-00531-CV 2008 WL 2602120, at *4 (Tex. App.—San Antonio 2008, pet. denied) (mem. op.). "When segregation is required, attorneys do not have to keep separate time records for each claim. Rather, an attorney's opinion that a certain percentage of the total time was spent on the claim for which fees are recoverable will suffice." *Williams*, 2025 WL 1338099, at *3 (citing *Chapa*, 212 S.W.3d at 314) (citation omitted).

Here, Zlotucha provided no testimony regarding the allocation of time across the many claims involved and, instead, simply took the position that they could not be segregated. *See Nguyen*, 229 S.W.3d at 455 (holding similar testimony is conclusory, particularly when "whether the claims were inextricably intertwined is not the test: rather, the test is whether discrete legal services advance both a claim or defense for which fees are recoverable and a claim or defense for which fees are unrecoverable").

Because we hold the trial court applied the wrong standard to determine the need to segregate, we remand the issue of attorney's fees to be relitigated. *See Kinsel*, 526 S.W.3d at 428 ("A failure to segregate attorneys fees does not preclude an attorneys-fees recovery. The issue may be remanded to the trial court for reconsideration with sufficiently detailed information for a meaningful review of the fees sought." (citation omitted)); *see also A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007); *Nguyen*, 229 S.W.3d at 455–56 ("When an appellate court sustained a challenge that attorney's fees were not properly segregated, the remedy is to sever that portion of the judgment awarding attorney's fees and to remand the cause for the issue to be relitigated.").

## CONCLUSION

Because we affirm the trial court's take nothing judgment as to Bravo's quantum meruit and suit on sworn account claim, we accordingly deny Bravo's request for attorney's fees. We further affirm the trial court's judgment granting the Gibbons parties conditional appellate attorney's fees. We reverse and remand only that portion of the trial court's judgment granting the Gibbons parties' attorney's fees incurred through trial for further proceedings consistent with our opinion. *See* TEX. R. APP. P. 43.2(d), 44.1(b).

Lori Massey Brissette, Justice